## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

GLAXOSMITHKLINE BIOLOGICALS SA
and GLAXOSMITHKLINE LLC,

           Plaintiffs,

      v.

MODERNA, INC., MODERNATX, INC., and
MODERNA US, INC.,

           Defendants.

Civil Action No. 24-cv-1136-GBW

**JURY TRIAL DEMANDED**

## MODERNA'S COUNTERCLAIMS AND ANSWER TO THE COMPLAINT

      Pursuant to Rule 13 of the Federal Rules of Civil Procedure, Defendants/Counterclaim-Plaintiffs Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. (collectively, "Moderna") by and through their attorneys, bring the following Counterclaims against Plaintiffs/Counterclaim-Defendants GlaxoSmithKline Biologicals SA ("GSK Biologicals") and GlaxoSmithKline LLC ("GSK LLC") (collectively, "GSK"):

## FACTUAL BACKGROUND

      1.    After failing to develop, obtain FDA approval for, and market, a modified messenger RNA ("mRNA")-based vaccine against respiratory syncytial virus ("RSV"), GSK resorts to the courtroom and its manipulation of the United States patent system to siphon resources and earnings from Moderna for Moderna's—*not GSK's*—efforts to address the world's struggles against respiratory infection, including RSV.  GSK did not invent Moderna's RSV vaccine, the mRNA platform technology upon which it is based, nor the lipid technology to deliver it.

Nevertheless, they try to profit from Moderna's ingenuity and expertise by suing Moderna for alleged patent infringement.

2.      The best GSK could do for an RSV vaccine, AREXVY®, relies on a traditional, decades-old, protein-based approach.  AREXVY® does not employ the technology that GSK claims is disclosed in the Patents-in-Suit, nor the mRNA platform technology that Moderna developed for its mRESVIA® vaccine.  Indeed, GSK's AREXVY® does not include any RNA, and does not employ any lipid delivery vehicle.  Rather than take the innovative approach that Moderna did, in which Moderna developed a novel mRNA (which is not disclosed, described or enabled in the Patents-in-Suit), and developed a novel proprietary lipid, SM-102, for its lipid nanoparticle ("LNP") delivery platform (also not disclosed, described or enabled in the Patents-in-Suit), GSK chose to lie in wait.

3.      The fact is GSK lacked the know-how to develop an mRNA-based vaccine and has been playing catch-up to Moderna for nearly a decade.  This is why, for example, in March of 2015, having no RNA vaccine platform of their own, GSK went out and bought rights to Novartis AG's self-replicating RNA vaccine patent portfolio (hereafter "the Novartis srRNA Vaccine Portfolio"), family members of which comprise the Patents-in-Suit.  But these patents and applications are drawn to an entirely different RNA technology and different lipid delivery system than the mRNA and LNP technology Moderna has pioneered since 2010.

4.      Nonetheless, GSK now asserts patents from the Novartis srRNA Vaccine Portfolio. But the claims of these patents are stretched far beyond the patents' written descriptions and enabling disclosures.  Indeed, the claims of the patents asserted against Moderna descend from families that nowhere disclose, describe or enable the novel mRNA platform technology Moderna developed for its RSV vaccine, Moderna's LNP delivery platform or the novel proprietary lipid,

SM-102, Moderna developed for its delivery platform. GSK's manipulations of the U.S. patent system are manifest in its efforts to obtain patent claims that purport to cover Moderna's RSV vaccine, only after GSK learned the details of Moderna's products from public disclosures, like U.S. Food & Drug Administration ("FDA") approval documents. Specifically, GSK selected a pending family that had been in prosecution for over a decade and filed a series of new applications with rewritten claims that GSK now alleges encompass Moderna's RSV vaccine. However, GSK improperly broadened the scope of the Novartis srRNA Vaccine Portfolio resulting in the claims lacking support. Accordingly, the claims of the asserted patents are not entitled priority to any of the earlier-filed applications.

5.      Even with the Novartis srRNA Vaccine Portfolio in hand, GSK lacked the expertise to develop that technology into a viable RNA-based RSV vaccine. Instead, GSK reverted to the old, traditional, protein-based vaccine technology, relying on RSV protein produced in cultured hamster cells, which, unlike Moderna's mRNA vaccine, requires burdensome filtration and purification processes to remove contaminating hamster by-products. (*See, e.g.*, Exhibit 49, AREXVY® Prescribing Information at 8 ("The RSVPreF3 antigen is expressed by culturing genetically engineered Chinese Hamster Ovary cells in media containing no antibiotics or animal-derived proteins. The RSVPreF3 protein is purified by several chromatographic and filtration steps, formulated with excipients, filled into vials, and lyophilized.")).

6.      In sum, GSK has not developed an FDA-approved vaccine for RSV that utilizes either the Novartis srRNA Vaccine Portfolio technology or any of the subject matter purportedly claimed in the patents it currently alleges Moderna infringes. GSK did not develop, much less invent, the modified mRNA platform technology upon which Moderna's RSV vaccine is based. Nor did GSK develop, much less invent, the proprietary LNP technology Moderna independently

conceived and developed to safely and effectively deliver the mRNA in its RSV vaccine. Neither GSK, nor Novartis AG, from whom GSK purchased its asserted patents, developed, much less invented, the mRNA-based Moderna RSV vaccine.

7.    Moderna brings these Counterclaims in response to GSK's Complaint, which baselessly seeks to profit from Moderna's innovations that led to its groundbreaking mRNA-based RSV vaccine, mRESVIA® (mRNA-1345). Specifically, Moderna asks this Court to declare the following: (a) that mRESVIA® does not infringe United States Patent Nos. 11,324,770 (the "'770 patent"), 11,690,861 (the "'861 patent"), 11,690,864 (the "'864 patent"), 11,717,529 (the "'529 patent"), 11,786,467 (the "'467 patent"), and 11,883,534 (the "'534 patent") (collectively, the "Patents-in-Suit"); (b) that the Patents-in-Suit are entitled to a priority date no-earlier than July 16, 2019; (c) that the Patents-in-Suit are invalid under 35 U.S.C. §§ 101, 102, 103 and/or 112; (d) that GSK is not entitled to any damages whatsoever; and (e) that GSK's conduct with respect to the Patents-in-Suit makes this case exceptional under 35 U.S.C. § 285 given the high likelihood that the Patents-in-Suit are invalid, unenforceable and/or not infringed by Moderna, and thus awarding Moderna its attorneys' fees, together with costs and disbursements, associated with defending against GSK's baseless allegations.

8.    Moderna developed, manufactured, and secured regulatory approval for a vaccine that proved to be effective in preventing severe disease, hospitalization, and death from RSV infection. Moderna did so at great risk to the company, by investing considerable sums of money and countless hours in an effort to address this serious—and potentially fatal—virus. Moderna successfully developed its product, proved its efficacy, established global manufacturing and supply chains, and gained regulatory approval, in a short amount of time. This is because Moderna's platform technology is designed to yield engineered mRNA as soon as a target is

identified, and then rely upon the vaccinated individual's own cellular machinery to produce the antigen that the individual's immune system will then use to initiate an immune response. This technology avoids the lengthy process associated with older, protein-based vaccines (like GSK's), where the protein would have to be identified, sequenced, and recombinantly expressed in host cells, usually cultured Chinese Hamster Ovary ("CHO") cells. (*See, e.g.*, Exhibit 49, AREXVY® Prescribing Information at 8 ("The RSVPreF3 antigen is expressed by culturing genetically engineered Chinese Hamster Ovary cells in media containing no antibiotics or animal-derived proteins. The RSVPreF3 protein is purified by several chromatographic and filtration steps, formulated with excipients, filled into vials, and lyophilized.")). The culturing process alone takes time to develop, refine, and validate. In addition, a lengthy purification process designed to remove impurities and CHO cell proteins and contaminants needs to be developed and validated. Moderna's mRNA-based vaccine technology avoids all these time-consuming steps. Through its efforts and innovative platform, Moderna has been at the forefront of helping the United States and the world address the burden of the RSV public health crisis.

9.      Unlike Moderna's efforts, GSK's failed. Although GSK's Complaint repeatedly refers to the alleged innovations of the "Mandl team," neither that team nor anyone at GSK developed or marketed an mRNA-based RSV vaccine for the U.S. or worldwide.

10.     The '770, '861, '864, and '529 patents list Andrew Geall, Katrin Ramsauer, Gillis Otten, and Christian Walter Mandl as the purported inventors (collectively, the "Novartis Family 1 Inventors"). The Novartis Family 1 Inventors did not conceive or reduce to practice the methods and compositions claimed by the '770, '861, '864, and '529 patents, and therefore, in addition to the claims failing to meet the requirements of 35 U.S.C. § 112, the '770, '861, '864, and '529 patents do not name the proper inventive entity.

11.     The '467 patent and the '534 patent only list Andrew Geall as a purported inventor; neither patent lists Mandl or any other members of the "Mandl team" as an inventor.  Given the overlapping subject matter of the claims in the '467 and '534 patents and the other asserted patents, Andrew Gaell did not conceive or reduce to practice the methods, compositions or formulations claimed in the '467 patent and the '534 patent.  Therefore, in addition to the claims failing to meet the requirements of 35 U.S.C. § 112, the '467 patent and the '534 patent do not name the proper inventive entity.

12.     The Mandle team did not invent or develop the LNP delivery platform or mRNA used in Moderna's RSV vaccine.

13.     The Patents-in-Suit do not describe or claim the LNP delivery platform or mRNA used in Moderna's RSV vaccine.

14.     Yet, GSK attempts to expand the scope of the Patents-in-Suit beyond anything that was purportedly invented by the Mandl team, or disclosed in the Novartis srRNA Vaccine Portfolio, to accuse Moderna's RSV vaccine of infringement, and extract unearned royalties from Moderna.

15.     GSK is seeking damages for a product that it did not invent and has never made.

16.     In short, this lawsuit will confirm that Moderna and its scientists, employees, and collaborators are the true innovators of the mRNA delivery technology that led to Moderna's lifesaving mRESVIA® vaccine.  GSK played no role in Moderna's significant accomplishments.

**A.     Moderna Was Founded in 2010 on the Promise of Developing mRNA Platform Technology to Create a New Generation of Transformative Medicines**

17.     Just fourteen years ago, mRNA medicines were a new and unproven technology. Although many doubted that this technology could ever be used to treat or prevent disease, Moderna recognized early on that it had great potential to improve patients' lives.   Since

6

Moderna's founding in 2010 in Cambridge, Massachusetts, the Company has been singularly focused on making mRNA medicines a reality through substantial investment and years of research and development.

18.    Moderna embodies the American ethos of innovation.  Its founders are scientists who challenged the status quo and took a chance on developing this unproven technology to treat and prevent some of the deadliest diseases and medical conditions.  They came together to create Moderna, a company name created from combining the terms "modified" and "RNA." Throughout its history, Moderna has prioritized science above all else, with a focus on helping patients who do not have other options.

### B.    Moderna's Pioneering Work on mRNA Medicines Using LNP Technology

19.    Since at least Moderna's founding in 2010, Moderna had been pioneering a new class of medicines made of mRNA, and developed its own platform technologies that could deliver mRNA in a variety of therapeutic and prophylactic applications, including vaccines.  Over the past fourteen years, Moderna has worked diligently in its laboratories to pioneer a number of fundamental breakthroughs in the field of mRNA technology.  These discoveries span all aspects of mRNA medicines—from the characteristics and design of the mRNA itself and the protein it encodes, to the technologies to deliver mRNA to patients safely and effectively.

20.    Included among the mRNA advancements that Moderna developed over years of extensive work is its proprietary LNP delivery platform to deliver the mRNA.  The LNPs function to protect the mRNA and deliver it into cells.  The LNP delivery technology used in mRESVIA® involves Moderna's proprietary lipid, SM-102.  Moderna scientist Dr. Kerry Benenato, and her team, conducted extensive work to discover a lipid for use in an LNP that would address the issues of being able to protect the delivery of fragile mRNA to the right location in the body, effectively deliver the mRNA to the cells of interest, and then biodegrade so as not to cause tolerability issues.

This was no small feat, and Moderna's scientists have been widely recognized for this accomplishment.

21.    Moderna invested years of work and resources to develop LNPs that are tailored to work with mRNA.  Those efforts included developing novel proprietary lipids, including SM-102, and improving LNP manufacturing processes.

**C.    Moderna's Development and Sale of mRESVIA®**

22.    RSV is one of the most common causes of lower respiratory disease in children under the age of five and in older adults.  Populations that are especially vulnerable to developing severe RSV infections include older adults.  Complications in adults include respiratory distress, pneumonia, bronchitis, hospitalization, and death.  In addition to acute infection, RSV can exacerbate underlying medical conditions such as asthma and chronic obstructive pulmonary disease and can result in acute myocardial infarction, stroke, and long-term decline of respiratory functions.  In the United States, RSV infection causes up to 160,000 hospitalizations and up to 10,000 deaths per year in adults aged 65 years or older.

23.    Recognizing, the severe impact that RSV has on communities in the U.S. and around the world, RSV was an early focus of Moderna's vaccine research and development work.  Years before any of GSK's asserted patents were on file at the United States Patent and Trademark Office ("PTO"), Moderna was engaged in groundbreaking research that led to the development of a new antigenic target for the RSV vaccine, a novelly modified and optimized mRNA species coding for that antigenic target, and a novel ionizable lipid, SM-102.  None of these developments are described anywhere in GSK's patent specifications, because it was not GSK that invented them.

24.    The unique combination of the above innovations developed by Moderna allowed for improvements in the RSV vaccine.

25.     mRESVIA® is an RSV vaccine that consists of an mRNA sequence encoding a stabilized prefusion F glycoprotein.  The F glycoprotein is expressed on the surface of the virus and is required for infection by helping the virus to enter host cells.  The prefusion conformation of the F protein is a significant target of potent neutralizing antibodies and is highly conserved across both RSV-A and RSV-B subtypes.  mRESVIA® uses Moderna's proprietary LNP delivery technology that Moderna developed years earlier.  It is the only RSV vaccine available in a convenient and efficient pre-filled syringe format, and the first mRNA vaccine to *protect* against RSV.  mRESVIA® is also the first mRNA vaccine approved for a disease other than COVID-19.  mRESVIA® is covered by a broad collection of patents for Moderna, including those with priority dates stemming back to October 2010.

26.     Other available RSV vaccines are "traditional" vaccines in that they consist of RSV protein.  The RSV protein in these traditional vaccines is typically recombinantly manufactured in bulk in non-human host cells.  (*See, e.g.,* Exhibit A, ABRYSVO® Prescribing Information at 19 ("The RSV preF A and RSV preF B recombinant proteins are expressed in genetically engineered Chinese Hamster Ovary cell lines grown in suspension culture . . . ."); Exhibit 49, AREXVY® Prescribing Information at 8 ("The RSVPreF3 antigen is expressed by culturing genetically engineered Chinese Hamster Ovary cells . . . .")).  In contrast, Moderna's innovative mRESVIA® incorporates not the protein antigen, but the genetic material (mRNA) encoding the antigen.  This enables production of the antigen within the human vaccine recipient's own cells, rendering it a more authentic target for the body's immune system, and avoiding the issues with recombinant protein expression and purification from non-human host cells.  GSK has never developed and brought to market an FDA approved RSV mRNA vaccine.

27.     On May 31, 2024, Moderna's mRESVIA® was approved by the FDA for active immunization for the prevention of lower respiratory tract disease ("LRTD") caused by RSV in individuals 60 years of age and older.  This approval was granted under a breakthrough therapy designation and supported by positive results from the global Phase III ConquerRSV trial.  (*See* Exhibit 22, 5/31/24 Moderna Press Release at 1).

28.     On August 22, 2024, mRESVIA® received a marketing authorization from the European Medicines Agency for active immunization for the prevention of LRTD caused by RSV in adults 60 years of age and older.

29.     On November 6, 2024, Moderna's mRESVIA® was approved by Health Canada for active immunization for the prevention of LRTD caused by RSV in adults 60 years of age and older.

### D.     Case and Controversy

30.     On May 10, 2022, according to the face of the '770 patent and the electronic records of the PTO, the '770 patent, entitled "Delivery of RNA to Trigger Multiple Immune Pathways," issued.  The '770 patent lists Andrew Geall, Katrin Ramsauer, Gillis Otten, and Christian Walter Mandl as the purported named inventors.  The '770 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '770 patent is attached to the Complaint as Exhibit 1 (D.I. 1-1).

31.     On July 4, 2023, according to the face of the '861 patent and the electronic records of the PTO, the '861 patent, entitled "Delivery of RNA to Trigger Multiple Immune Pathways," issued.  The '861 patent lists Andrew Geall, Katrin Ramsauer, Gillis Otten, and Christian Walter Mandl as the purported named inventors.  The '861 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '861 patent is attached to the Complaint as Exhibit 2 (D.I. 1-1).

32.     On July 4, 2023, according to the face of the '864 patent and the electronic records of the PTO, the '864 patent, entitled "Delivery of RNA to Trigger Multiple Immune Pathways," issued.  The '864 patent lists Andrew Geall, Katrin Ramsauer, Gillis Otten, and Christian Walter Mandl as the purported named inventors.  The '864 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '864 patent is attached to the Complaint as Exhibit 3 (D.I. 1-1).

33.     On August 8, 2023, according to the face of the '529 patent and the electronic records of the PTO, the '529 patent, entitled "Delivery of RNA to Trigger Multiple Immune Pathways," issued.  The '529 patent lists Andrew Geall, Katrin Ramsauer, Gillis Otten, and Christian Walter Mandl as the purported named inventors.  The '529 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '529 patent is attached to the Complaint as Exhibit 4 (D.I. 1-1).

34.     On October 17, 2023, according to the face of the '467 patent and the electronic records of the PTO, the '467 patent, entitled "Lipid Formulations with Immunogens," issued.  The '467 patent lists Andrew Geall as the purported named inventor.  The '467 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '467 patent is attached to the Complaint as Exhibit 5 (D.I. 1-1).

35.     On January 30, 2024, according to the face of the '534 patent and the electronic records of the PTO, the '534 patent, entitled "Immunisation with Lipid Formulations with RNA Encoding Immunogens," issued.  The '534 patent lists Andrew Geall as the purported named inventor.  The '534 patent lists GSK Biologicals as the purported assignee.  Plaintiffs/Counterclaim-Defendants allege that a true and correct copy of the '534 patent is attached to the Complaint as Exhibit 6 (D.I. 1-1).

36.     According to the Complaint (D.I. 1, Comp. ¶ 10), GSK Biologicals purports to be the owner of all the Patents-in-Suit.

37.     According to the Complaint (D.I. 1, Comp. ¶ 11), GSK LLC purports to be the exclusive distributor of any product(s) covered by the Patents-in-Suit in the United States.

38.     An actual, substantial, and justifiable controversy, within the meaning of 28 U.S.C. §§ 2201 and 2202, exists between Defendants/Counterclaim-Plaintiffs and Plaintiffs/Counterclaim-Defendants.

39.     Defendants/Counterclaim-Plaintiffs are entitled to a judicial determination and declaration that they have not infringed and are not infringing the Patents-in-Suit and that the Patents-in-Suit are invalid, unenforceable, and not infringed.

**E.      GSK's Acquisition of the Novartis srRNA Vaccine Portfolio**

40.     On July 6, 2010, Novartis Vaccines and Diagnostics, Inc. ("Novartis Vaccines") filed the first provisional application in a first family of patents now asserted by GSK against Moderna, U.S. Provisional Patent Application 61/361,789 (the "'789 provisional application"), entitled "Delivery of RNA to Trigger Multiple Immune Pathways."   (*See* Exhibit B, '789 provisional application).   The '789 provisional application does not claim, disclose, describe, or enable (nor is it relevant to) the use of non-self-replicating RNA or a lipid delivery system other than liposomes, and nowhere discloses the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

41.     On July 6, 2010, Novartis Vaccines filed a first provisional application in a second family of patents now asserted by GSK, U.S. Provisional Patent Application No. 61/361,830 (the "'830 provisional application"), entitled "Tertiary Amine Liposomes for RNA Delivery."   The '830 provisional application does not claim, disclose, describe, or enable (nor is it relevant to) the

use of non-self-replicating RNA or a lipid delivery system other than liposomes, and nowhere discloses the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

42.     On August 31, 2010, Novartis Vaccines filed a second provisional application in the second family of patents now asserted by GSK against Moderna, U.S. Provisional Patent Application No. 61/378,837 (the "'837 provisional application"), entitled "Liposomes with Lipids Having Advantageous pKa for RNA Delivery."  The '837 provisional application does not claim, disclose, describe or enable (nor is it relevant to) the use of non-self-replicating RNA or a lipid delivery system other than one using liposomes, and nowhere discloses the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

43.     On July 6, 2011, Novartis Vaccines filed its first non-provisional application that purportedly claims the benefit of the '789 provisional application:  U.S. Application Ser. No. 13/808,085 (the "'085 application").  Neither the '789 provisional application nor the '085 application claims, discloses, describes or enables (nor are they relevant to) the use of modified mRNA in an LNP; mRNA is not even mentioned in the specifications.

44.     On July 6, 2011, Novartis Vaccines also filed its first non-provisional application, which purportedly claims the benefit of the '830 provisional and '837 provisional applications: U.S. Application Ser. No. 13/808,080 (the "'080 application").  Neither the '830 and '837 provisional applications nor the '080 application discloses, describes or enables (nor are they relevant to) the use of modified mRNA in an LNP; mRNA is not even mentioned in the specifications.

45.     None of the Novartis Vaccines applications referenced in Paragraphs 40-44 above (i.e., the '789 provisional application, the '830 provisional application, the '837 provisional application, the '085 application, and the '080 application) disclose, describe or enable a

composition comprising non-self-replicating mRNA in LNPs and nowhere disclose the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

46.     Unlike mRNA, self-replicating RNA involves the introduction of RNA parts of a virus responsible for viral replication that have been modified to add sequence encoding an antigen.  In other words, self-replicating RNA ("srRNA") vaccines encode for viral replicase and transcription machinery, while mRNA vaccines do not.  In addition, in srRNA vaccines, in contrast to mRNA vaccines, the delivered nucleic acid payload is not directly translated into the antigen of interest, rather, additional steps are required to produce the antigen.  For example, whereas mRNA is translated by cells in the vaccinated individual's body to produce its encoded antigen, srRNA produces replicon machinery that directs expression of "sub-genomic RNA" that is only then ultimately translated into an antigen.  The Patents-in-Suit are limited to disclosure of srRNA vaccines, which are materially different from mRNA vaccines.

47.     srRNA is also referred to as self-amplifying RNA ("saRNA").

48.     On March 30, 2013, assignment documents were filed with the PTO purporting that the '085 application was assigned to Novartis AG as of March 28, 2013.

49.     On April 1, 2013, Novartis Vaccines purported to assign the '080 application to Novartis AG.

50.     In March of 2015, GSK acquired the rights to the Novartis srRNA Vaccine Portfolio, including, among others, the aforementioned applications (*see* Paragraphs 40-44) which ultimately led to the Patents-in-Suit.

**F.      GSK's Improper Attempts to Expand the Scope of the Novartis srRNA Vaccine Portfolio by Adding New Matter to Its Pending Applications**

51.     Upon GSK's acquisition of the Novartis srRNA Vaccine Portfolio in March 2015, all pending claims were expressly limited to, *inter alia*, compositions comprising "self-replicating

RNA." (*See, e.g.*, Exhibit C, '085 application file history, July 22, 2015 Request for Continued Examination at Claim 1; Exhibit D, '080 application file history, June 16, 2015 Amendment at Claim 1, 19, 30).

52.    On June 22, 2016, assignment documents were filed with the PTO purporting that the '080 application was assigned to GSK Biologicals as of June 15, 2016.

53.    On October 5, 2017, GSK Biologicals filed a second non-provisional patent application that purportedly claims the benefit of the '789 provisional application, U.S. Patent Application No. 15/725,858 (the "'858 application"), entitled "Delivery of RNA to Trigger Multiple Immune Pathways." The '858 application does not claim, disclose, describe, or enable (nor are they relevant to) the use of non-self-replicating RNA or a lipid delivery system other than liposomes, and nowhere discloses the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

54.    On October 31, 2017, the '085 application issued as U.S. Patent No. 9,801,897 (the "'897 patent"). Neither the '085 application nor the '897 patent discloses, describes or enables (nor are they relevant to) the use of modified mRNA in an LNP; mRNA is not even mentioned in the specifications.

55.    On February 12, 2019, Moderna announced "topline data from the first planned interim analysis of safety and immunogencity from its Phase 1 study of mRNA-1653 in healthy adults," which demonstrated that "a single vaccination with mRNA-1653 boosted serum neutralization titers against hMPV [human metapneumovirus] and PIV3 [parainfluenza virus type 3]." (Exhibit E, 2/12/2019 Moderna Press Release at 1). This press release further announced that "[m]uch of Moderna's commercial vaccine development efforts are focused on addressing major causes of respiratory infections." (*Id.*)

56.    On May 10, 2019, Moderna announced "the publication of results from two Phase 1 clinical studies showing that mRNA vaccines against H10N8 and H7N9 influenza viruses were well-tolerated and elicited robust immune responses."  (Exhibit F, 5/10/2019 Moderna Press Release at 1).  This press release further stated that these results "support the potential of mRNA-based vaccines to quickly and effectively address pandemic influenza strains."  (*Id*.)

57.    Just six weeks after Moderna's May 10th press release, on July 16, 2019, GSK filed U.S. Application No. 16/512,541 (the "'541 application") as a purported continuation of the '858 application, but with a preliminary amendment to propose claims, that, for the first time in the history of the Novartis srRNA Vaccine Portfolio, were directed toward compositions comprising "mRNA."  (*See* Exhibit G, '541 application file history, July 16, 2019 Preliminary Amendment at Claims 13, 23).[1]  In other words, it was not until Moderna published positive data regarding its success with mRNA vaccines that GSK filed continuation applications with claims redrawn to improperly ensnare prior art compositions comprising mRNA.  Notwithstanding these newly-filed claims, the specification is expressly limited to "self-replicating RNA" and the Examples are limited to self-replicating RNA "encapsulated in a liposome."  Accordingly, aside from its manipulation of the U.S. patent system, the preliminary amendment constitutes new matter and the claims of the '541 application (which ultimately issued as U.S. Patent No. 11,291,682) are not entitled to a priority date earlier than July 16, 2019, the date GSK filed the '541 application.

58.    On January 13, 2020, GSK Biologics filed a fourth non-provisional patent application that purportedly claims the benefit of the '789 provisional application, U.S. Patent Application No. 16/740,924 (the "'924 application"), entitled "Delivery of RNA to Trigger

---

[1] Notably, the claims were further limited to "liposome encapsulated" mRNA wherein "all of the nucleotides in the RNA are standard A, C, G and U ribonucleotides other than a 5' cap."

Multiple Immune Pathways."  The '924 application, as filed following preliminary amendment, did not claim, disclose, describe, or enable (nor are they relevant to) the use of non-self-replicating RNA or a lipid delivery system other than liposomes, and nowhere discloses the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

59.     On December 18, 2020, Moderna announced FDA's Emergency Use Authorization ("EUA") for its COVID-19 vaccine.  (Exhibit H, 12/18/2020 Moderna Press Release at 1).

60.     Moderna's purported vaccine composition was published, including, for example, in the International Journal of Pharmaceutics in April 2021.  (*See, e.g.*, Exhibit 50, Schoenmaker (2021) at 1 ("[T]he two vaccines that have shown the most promising results in preventing COVID-19 infection represent a new class of vaccine products: they are composed of messenger ribonucleic acid (mRNA) strands encapsulated in lipid nanoparticles (LNPs)."); *id.* at 4 ("The LNPs in mRNA COVID-19 vaccines consist of four main components (cf. Table 1): a neutral phospholipid, cholesterol, a polyethylene-glycol (PEG)-lipid, and an ionizable cationic lipid."); *see also* Exhibit I,  Heinz, F.X., *Distinguishing features of current COVID-19 vaccines: knowns and unknowns of antigen presentation and modes of action*, 6 NPJ VACCINES 104 (2021)).

61.     On July 12, 2021, and only after information concerning Moderna's vaccine composition was publicly available, GSK submitted a request for reexamination of the '541 application and three (3) months after that, on October 27, 2021, GSK filed U.S. Application No. 17/511,762 (the "'762 application") as a purported continuation of the '541 application.  GSK submitted a preliminary amendment canceling all prior claims in favor of new claims directed to, for the first time in the history of this patent family, "[a] composition comprising lipid particles and mRNA molecules"—i.e., parroting the published descriptions of Moderna's vaccine.  The '762 application ultimately issued as U.S. Patent No. 11,596,645 (the "'645 patent").  Nothing in

the '762 application discloses, describes or enables "a composition comprising lipid particles and mRNA molecules" and therefore the preliminary amendment submitted with the '762 application constituted new matter never disclosed in the parent applications.  Accordingly, the '645 patent claims are not entitled to a priority date earlier than October 27, 2021, the date GSK filed the '762 application.

62.     Also on October 27, 2021, GSK filed a second preliminary amendment in then-pending '924 application, which canceled all pending claims and replaced them with new claims directed to, for the first time in the history of this patent family, "immunogenic composition[s] comprising lipid particles and messenger ribonucleic acid (mRNA) molecules" wherein the lipid particles comprise "polyethylene glycolylated (PEGylated) phospholipid, cholesterol, a first phospholipid, and a cationic lipid"—i.e., parroting the published descriptions of Moderna's vaccine.  The '924 application ultimately issued as the '770 patent.  Nothing in the '924 application discloses, describes or enables "immunogenic composition[s] comprising lipid particles and messenger ribonucleic acid (mRNA) molecules" or lipid particles comprising "polyethylene glycolylated (PEGylated) phospholipid, cholesterol, a first phospholipid, and a cationic lipid" and therefore the preliminary amendment submitted with the '924 application constituted new matter never disclosed in the parent applications.  Accordingly, the '770 patent claims are not entitled to a priority date earlier than October 27, 2021, the date GSK filed the second preliminary amendment in the '924 application.

63.     On October 28, 2021, GSK filed amendments in the '080 application to (i) eliminate "self-replicating" RNA as a limitation from the pending claims and (ii) submit new claims directed to pharmaceutical compositions comprising "lipid particles and mRNA molecules" where in the lipid particles comprise "a polyethylene glycol-ylated (PEGylated) phospholipid, cholesterol, a

first phospholipid, and a first lipid: i) comprising a tertiary amine and a cationic head group"—i.e., parroting the published descriptions of Moderna's vaccine. (*See, e.g.*, Exhibit 50, Schoenmaker (2021) at 4 ("The LNPs in mRNA COVID-19 vaccines consist of four main components (cf. Table 1): a neutral phospholipid, cholesterol, a polyethylene-glycol (PEG)-lipid, and an ionizable cationic lipid. The latter contains positively charged ionizable amine groups (at low pH) . . . .")). The '080 application is the parent application to both the '467 patent and the '534 patent. Nothing in the '080 application specification discloses, describes or enables the newly-submitted claims in GSK's amendment. Accordingly, the '467 patent and the '534 patent claims are not entitled to a priority date earlier than October 28, 2021, the date GSK filed its amendment in the '080 application.

64.    On December 13, 2022, GSK Biologicals filed several new non-provisional patent applications including U.S. Patent Application Nos. 18/065,076 (the "'076 application"), 18/065,106 (the "'106 application"), and 18/065,089 (the "'089 application"). Each of the applications purport to be a continuation of U.S. Patent Application No. 17/511,762 (the "'762 application"), which was filed on October 27, 2021 as a purported continuation of the '541 application but with a preliminary amendment canceling all prior claims in favor of new claims directed to, for the first time in the history of this patent family, "a composition comprising lipid particles and mRNA molecules"—*i.e.*, parroting the published descriptions of Moderna's vaccine. The '076 application, '106 application, and '089 application each sought claims reciting compositions comprising "lipid particles and messenger ribonucleic acid (mRNA) molecules" with "the lipid particles encapsulating at least half of the mRNA molecules." Nothing in the '541 application discloses, describes or enables compositions comprising non-self-replicating RNA molecules encapsulated in LNPs. Accordingly, the '861 patent claims, '864 patent claims, and

'529 patent claims are not entitled to a priority date earlier than October 27, 2021, the date GSK filed the '762 application.

65.     On December 22, 2021, GSK filed U.S. Patent Application Nos. 17/560,019 (the "'019 application") and 17/560,059 (the "'059 application"). The '019 application purported to be a continuation of the '080 application, and the '059 application purported to be a division of the '080 application. GSK filed preliminary amendments in both the '019 and '059 applications.

66.     In the preliminary amendment for the '019 application, GSK amended all claims to eliminate the "liposome having a lipid bilayer encapsulating an aqueous core" limitation in favor of new claims directed toward "a formulation comprising" *inter alia* "lipids comprising a tertiary amine cationic lipid, a polyethylene glycol-conjugated (PEG-conjugated) lipid, and cholesterol"— i.e., parroting the published descriptions of Moderna's vaccine. (*See* Exhibit 50, Schoenmaker (2021) at 4 ("The LNPs in mRNA COVID-19 vaccines consist of four main components (cf. Table 1): a neutral phospholipid, cholesterol, a polyethylene-glycol (PEG)-lipid, and an ionizable cationic lipid. The latter contains positively charged ionizable amine groups (at low pH) . . . .")). Nothing in the '019 application (which issued as the '467 patent) discloses, describes or enables compositions comprising non-self-replicating RNA molecules encapsulated in LNPs. Accordingly, the '467 patent claims are not entitled to a priority date earlier than October 28, 2021, the date GSK filed its amendment in the '080 application.

67.     In the preliminary amendment for the '059 application, GSK amended all claims to eliminate the "liposome having a lipid bilayer encapsulating an aqueous core" limitation in favor of new claims directed toward a "method of eliciting an immune response against an immunogen in a subject, the method comprising" *inter alia* "lipids comprising a tertiary amine cationic lipid, a polyethylene glycol-conjugated (PEG-conjugated) lipid, and cholesterol"—i.e., parroting the

published descriptions of Moderna's vaccine.  (*See* Exhibit 50 at 4 ("The LNPs in mRNA COVID-19 vaccines consist of four main components (cf. Table 1): a neutral phospholipid, cholesterol, a polyethylene-glycol (PEG)-lipid, and an ionizable cationic lipid.  The latter contains positively charged ionizable amine groups (at low pH) . . . .")).  Nothing in the '059 application discloses, describes or enables compositions comprising non-self-replicating RNA molecules encapsulated in LNPs.

68.    On August 8, 2023, GSK filed U.S. Patent Application No. 18/231,692 (the "'692 application"), which to be a continuation of the '059 application.  In a Preliminary Amendment for the '692 application, GSK cancelled all claims to eliminate the "liposome having a lipid bilayer encapsulating an aqueous core" limitation in favor of new claims directed toward a "method of eliciting an immune response against an immunogen in a subject, the method comprising" *inter alia* "the lipid particles comprising: (a) from 40 mole% to 60 mole% cationic lipid comprising a tertiary amine, (b) a polyethylene glycol-conjugated (PEG-conjugated) lipid, and (c) from 35 mole% to 50 mole% cholesterol"—i.e., pulling from the description of Moderna's vaccine in the Int'l J. of Pharmaceutics publication.  (*See* Exhibit 50, Schoenmaker (2021) at 4 ("The LNPs in mRNA COVID-19 vaccines consist of four main components (cf. Table 1): a neutral phospholipid, cholesterol, a polyethylene-glycol (PEG)-lipid, and an ionizable cationic lipid. The latter contains positively charged ionizable amine groups (at low pH) . . . .")).  Nothing in the '692 application (which issued as the '534 patent) discloses, describes or enables compositions comprising non-self-replicating RNA molecules encapsulated in LNPs.  The '534 patent claims are not entitled to a priority date earlier than October 28, 2021, the date GSK filed its amendment in the '080 application.

69.     The following asserted patents all purport to claim the benefit of the '789 provisional application:  the '770 patent, the '861 patent, the '864 patent, and the '529 patent (collectively, the "Novartis Family 1 Asserted Patents").  The Novartis Family 1 Asserted Patents name the following individuals as purported inventors:  Andrew Gaell, Katrin Ramsauer, Gillis Otten and Christian Walter Mandl (collectively, the "Novartis Family 1 Inventors").  The Novartis Family 1 Inventors did not conceive or reduce to practice the methods and compositions claimed in the Novartis Family 1 Asserted Patents, and therefore, in addition to the claims failing to meet the requirements of 35 U.S.C. § 112, the Novartis Family 1 Asserted Patents do not name the proper inventive entity.

70.     The following asserted patents all purport to claim the benefit of the '830 provisional and '837 provisional applications:  the '467 patent and the '534 patent (collectively, the "Novartis Family 2 Asserted Patents").  The Novartis Family 2 Asserted Patents name only Andrew Gaell as the purported inventor.  Andrew Gaell did not conceive or reduce to practice the methods, compositions or formulations claimed in the Novartis Family 2 Asserted Patents, and therefore, in addition to the claims failing to meet the requirements of 35 U.S.C. § 112, the Novartis Family 1 Asserted Patents do not name the proper inventive entity.

71.     No disclosure or example in any of the Patents-in-Suit describes or enables a composition comprising (non-self-replicating) RNA, much less a composition comprising the chemically modified mRNA used in Moderna's mRESVIA® vaccine.

72.     No disclosure or example in any of the Patents-in-Suit describes or enables a composition comprising a LNP delivery platform, and no disclosure or example describes the structure or use of SM-102, Moderna's novel and proprietary ionizable lipid.

73.     After learning of Moderna's successes, and having failed to develop an mRNA vaccine of its own, GSK added new matter to the Novartis srRNA Vaccine Portfolio in an improper attempt to expand the scope of its pending claims and ensnare the prior art.

74.     The claims of the Patents-in-Suit are precluded by the prior art, which includes Moderna's own patents, patent applications, publications and press releases related to its vaccines (including, *e.g.*, Moderna's SPIKEVAX® vaccine) and the underlying technology Moderna conceived and developed over the course of over ten (10) years.

**G.     GSK Improperly Seeks to Profit from Moderna's mRESVIA® Vaccine**

75.     GSK manipulated the U.S. patent system with a series of belated applications and amendments to the Novartis srRNA Vaccine Portfolio, adding new matter taken from the prior art and public disclosures of Moderna's mRNA vaccine technology and proprietary LNP delivery system in an improper attempt to expand the patent portfolio and retroactively capitalize on Moderna's success.

76.     GSK now seeks to profit not from technology GSK or its predecessors (*e.g.*, Novartis Vaccines and Novartis AG) invented, but rather from its unscrupulous manipulation of the U.S. patent system and improper contortion of the specifications and claims of the Patents-in-Suit into something it alleges covers mRESVIA®.

77.     GSK does not report having made and used an LNP encapsulating non-self-replicating mRNA in any of the Patents-in-Suit.

78.     The only lipid delivery platform GSK discloses in the Patents-in-Suit is liposomes.

79.     GSK's alleged claimed liposomes are not the LNP system used in Moderna's RSV vaccine.

80.     GSK's alleged claimed liposomes have never been included in an RSV vaccine.

81.     GSK's AREXVY® vaccine is not an mRNA vaccine.

82.     GSK's AREXVY® vaccine is a traditional protein-based vaccine.

83.     GSK's AREXVY® vaccine does not apply the technology purportedly disclosed or claimed in the Patents-in-Suit.

84.     GSK's AREXVY® vaccine is irrelevant to the Patents-in-Suit.

85.     GSK's AREXVY® vaccine is not an embodiment of the Patents-in-Suit.

86.     GSK's AREXVY® vaccine does not include a lipid delivery system.

87.     GSK has publicly identified other patents as purportedly covering its AREXVY® product.[2]

### H.    GSK Tries to Claim SM-102, Which It Did Not Invent

88.     The Patents-in-Suit are directed to the use of self-replicating RNA and the use of liposomes containing the cationic lipid 1,2-dilinoleyloxy-n,n-dimethyl-3-aminopropane ("DlinDMA"), technology which is separate and distinct from (and irrelevant to) Moderna's proprietary SM-102 lipid and LNPs containing SM-102, in combination with its modified and engineered mRNA payload.

89.     Although the original application was filed in 2010, neither GSK nor Novartis (GSK's predecessors-in-interest to the Novartis srRNA Patent Portfolio) sought patent claims that purportedly covered Moderna's proprietary technology until *after* the structure of Moderna's SM-102 lipid and the composition of its FDA approved mRNA vaccines was made public. Only then did GSK cobble together a jumbled assortment of hundreds of overlapping claims it hoped would retroactively cover Moderna's proprietary components used in Moderna's groundbreaking LNP technology for mRNA delivery and mRESVIA®. But those claims are fatally flawed, having been stretched far beyond the Patents-in-Suits' limited disclosures.

---

[2] *See, e.g.*, *GlaxoSmithKline Biologicals SA et al. v. Pfizer Inc.*, C.A. No. 23-cv-831-MN (D. Del.), Second Amended Complaint ¶ 28 (D.I. 46).

## PARTIES

90.    Moderna, Inc. is a company organized and existing under the laws of the State of Delaware with a principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.

91.    ModernaTX, Inc. is a company organized and existing under the laws of the State of Delaware with a principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.

92.    Moderna US, Inc. is a company organized and existing under the laws of the State of Delaware with a place of business at 325 Binney Street, Cambridge, Massachusetts 02142.

93.    On information and belief, GSK Biologicals is a corporation organized and existing under the laws of Belgium, with its principal place of business at Avenue Fleming 20, 1300 Wavre, Belgium.

94.    On information and belief, GSK LLC is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 2929 Walnut Street, Suite 1700, Philadelphia, Pennsylvania 19104.

## NATURE OF THE ACTION

95.    Moderna seeks declaratory judgment under the patent laws of the United States, 35 U.S.C. § 100 et seq., and the Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., that the Patents-in-Suit are invalid, unenforceable, and/or not infringed.

## JURISDICTION AND VENUE

96.    This Court has subject matter jurisdiction over these Counterclaims for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202 based on an actual controversy among the parties arising under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

97.    Personal jurisdiction over GSK is proper because GSK has consented to the personal jurisdiction of the Court by commencing its action for patent infringement in this Judicial District, as set forth in its Complaint.

98.    Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400 as GSK Biologicals is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, GSK LLC is organized and existing under the laws of the State of Delaware, and by virtue of GSK's filing of this lawsuit in this venue.

99.    There is a real, immediate, and justiciable controversy among the parties concerning non-infringement, unenforceability, and invalidity of the Patents-in-Suit.

## COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '770 PATENT

100.    Moderna repeats and incorporates paragraphs 1-99 as if fully set forth herein.

101.    GSK has brought claims against Moderna alleging Moderna's mRESVIA® infringes the '770 patent.

102.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '770 patent.

103.    Moderna has not infringed and is not infringing any valid claim of the '770 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

104.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '770 patent, either literally or under the doctrine of equivalents.

## COUNT II
## DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '861 PATENT

105.    Moderna repeats and incorporates paragraphs 1-104 as if fully set forth herein.

106.    GSK has brought claims against Moderna alleging Moderna's mRESVIA® infringes the '861 patent.

107.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '861 patent.

108.    Moderna has not infringed and is not infringing any valid claim of the '861 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

109.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '861 patent, either literally or under the doctrine of equivalents.

**COUNT IIII**
**DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '864 PATENT**

110.    Moderna repeats and incorporates paragraphs 1-109 as if fully set forth herein.

111.    GSK has brought claims against Moderna alleging Moderna's mRESVIA® infringes the '864 patent.

112.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '864 patent.

113.    Moderna has not infringed and is not infringing any valid claim of the '864 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

114.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '864 patent, either literally or under the doctrine of equivalents.

**COUNT IV**
**DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '529 PATENT**

115.    Moderna repeats and incorporates paragraphs 1-114 as if fully set forth herein.

116.    GSK has brought claims against Moderna alleging Moderna's mRESVIA® infringes the '529 patent.

117.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '529 patent.

118.    Moderna has not infringed and is not infringing any valid claim of the '529 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

119.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '529 patent, either literally or under the doctrine of equivalents.

## COUNT V
## DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '467 PATENT

120.    Moderna repeats and incorporates paragraphs 1-119 as if fully set forth herein.

121.    GSK has brought claims against Moderna alleging Moderna's mRESVIA® infringes the '467 patent.

122.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '467 patent.

123.    Moderna has not infringed and is not infringing any valid claim of the '467 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

124.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '467 patent, either literally or under the doctrine of equivalents.

<u>**COUNT VI**</u>
<u>**DECLARATORY JUDGMENT OF NON-INFRINGMENT OF THE '534 PATENT**</u>

125.    Moderna repeats and incorporates paragraphs 1-124 as if fully set forth herein.

126.    GSK has brought claims against Moderna alleging Moderna's alleging mRESVIA® infringes the '534 patent.

127.    A real, immediate, and justiciable controversy exists between GSK and Moderna regarding Moderna's alleged infringement of the '534 patent.

128.    Moderna has not infringed and is not infringing any valid claim of the '534 patent, willfully or otherwise, directly or indirectly, either literally or by application of the doctrine of equivalents.

129.    Moderna is entitled to a declaratory judgment that Moderna does not infringe, either directly or indirectly, and has not infringed, either directly or indirectly, any valid claim of the '534 patent, either literally or under the doctrine of equivalents.

<u>**COUNT VII**</u>
<u>**DECLARATORY JUDGMENT OF INVALIDITY OF THE '770 PATENT**</u>

130.    Moderna repeats and incorporates paragraphs 1-129 as if fully set forth herein.

131.    GSK has brought claims against Moderna alleging infringement claims of the '770 patent.

132.    Moderna alleges that the claims of the '770 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

133.    Moderna is entitled to a declaratory judgment from this Court that the '770 patent is invalid.

**COUNT VIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '861 PATENT**

134.    Moderna repeats and incorporates paragraphs 1-133 as if fully set forth herein.

135.    GSK has brought claims against Moderna alleging infringement of claims of the '861 patent.

136.    Moderna alleges that the claims of the '861 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

137.    Moderna is entitled to a declaratory judgment from this Court that the '861 patent is invalid.

**COUNT IX**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '864 PATENT**

138.    Moderna repeats and incorporates paragraphs 1-137 as if fully set forth herein.

139.    GSK has brought claims against Moderna alleging infringement of claims of the '864 patent.

140.    Moderna alleges that the claims of the '864 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

141.    Moderna is entitled to a declaratory judgment from this Court that the '864 patent is invalid.

## COUNT X
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '529 PATENT

142.    Moderna repeats and incorporates paragraphs 1-141 as if fully set forth herein.

143.    GSK has brought claims against Moderna alleging infringement of claim(s) of the '529 patent.

144.    Moderna alleges that the claims of the '529 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

145.    Moderna is entitled to a declaratory judgment from this Court that the '529 patent is invalid.

## COUNT XI
## DECLARATORY JUDGMENT OF  INVALIDITY OF THE '467 PATENT

146.    Moderna repeats and incorporates paragraphs 1-145 as if fully set forth herein.

147.    GSK has brought claims against Moderna alleging infringement of at least claim 1 of the '467 patent.

148.    Moderna alleges that the claims of the '467 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

149.    Moderna is entitled to a declaratory judgment from this Court that the '467 patent is invalid.

<u>**COUNT XII**</u>
<u>**DECLARATORY JUDGMENT OF INVALIDITY OF THE '534 PATENT**</u>

150.    Moderna repeats and incorporates paragraphs 1-149 as if fully set forth herein.

151.    GSK has brought claims against Moderna alleging infringement of at least claim 1 of the '534 patent.

152.    Moderna alleges that the claims of the '534 patent are invalid for failure to comply with the statutory prerequisites of Title 35 of the United States Code, including without limitation, one or more of §§ 101, 102, 103, 112, improper inventorship, and/or any judicially created requirements for patentability and enforceability of patent and/or in view of the defenses recognized in 35 U.S.C. § 282.

153.    Moderna is entitled to a declaratory judgment from this Court that the '534 patent is invalid.

<u>**COUNT XIII**</u>
<u>**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '770 PATENT DUE TO PROSECUTION LACHES**</u>

154.    Moderna repeats and incorporates paragraphs 1-153 as if fully set forth herein.

155.    The '770 patent claims are not entitled to a priority date earlier than October 27, 2021.

156.    Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 27, 2021.

157.    In the event the '770 patent or any claim of the '770 patent is afforded a priority date before October 27, 2021, then such claim of the '770 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the

content of those claims and/or that GSK changed the disclosures of the application to which the '770 patent purports to claim priority.

158.    Prior to October 27, 2021, the pending specification and claims of the '924 application (to which the '770 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

159.    Prior to October 27, 2021, no publicly available information regarding the Novartis Family 1 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

160.    During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

161.    Any enforcement of any claim of the '770 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

162.    GSK engaged in unexplained and unreasonable delay in the prosecution of the '770 patent and any enforcement of any claim of the '770 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '770 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

## COUNT XIV
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '861 PATENT DUE TO PROSECUTION LACHES

163. Moderna repeats and incorporates paragraphs 1-162 as if fully set forth herein.

164. The '861 patent claims are not entitled to a priority date earlier than October 27, 2021.

165. Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 27, 2021.

166. In the event the '861 patent or any claim of the '861 patent is afforded a priority date before October 27, 2021, then such claim of the '861 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the '861 patent purports to claim priority.

167. Prior to October 27, 2021, the pending specification and claims of the '762 application (to which the '861 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

168. Prior to October 27, 2021, no publicly available information regarding the Novartis Family 1 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

169. During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

34

170.     Any enforcement of any claim of the '861 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

171.     GSK engaged in unexplained and unreasonable delay in the prosecution of the '861 patent and any enforcement of any claim of the '861 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '861 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

### COUNT XV
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '864 PATENT DUE TO PROSECUTION LACHES

172.     Moderna repeats and incorporates paragraphs 1-171 as if fully set forth herein.

173.     The '864 patent claims are not entitled to a priority date earlier than October 27, 2021.

174.     Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 27, 2021.

175.     In the event the '864 patent or any claim of the '864 patent is afforded a priority date before October 27, 2021, then such claim of the '864 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the '864 patent purports to claim priority.

176.    Prior to October 27, 2021, the pending specification and claims of the '762 application (to which the '864 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

177.    Prior to October 27, 2021, no publicly available information regarding the Novartis Family 1 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

178.    During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

179.    Any enforcement of any claim of the '864 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

180.    GSK engaged in unexplained and unreasonable delay in the prosecution of the '864 patent and any enforcement of any claim of the '864 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '864 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches

### COUNT XVI
### DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '529 PATENT DUE TO PROSECUTION LACHES

181.    Moderna repeats and incorporates paragraphs 1-180 as if fully set forth herein.

182.    The '529 patent claims are not entitled to a priority date earlier than October 27, 2021.

183.    Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 27, 2021.

184.    In the event the '529 patent or any claim of the '529 patent is afforded a priority date before October 27, 2021, then such claim of the '529 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the '529 patent purports to claim priority.

185.    Prior to October 27, 2021, the pending specification and claims of the '762 application (to which the '529 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

186.    Prior to October 27, 2021, no publicly available information regarding the Novartis Family 1 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

187.    During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

188.    Any enforcement of any claim of the '529 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability

to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

189.    GSK engaged in unexplained and unreasonable delay in the prosecution of the '529 patent and any enforcement of any claim of the '529 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '529 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

**COUNT XVII**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '467 PATENT DUE TO PROSECUTION LACHES**

190.    Moderna repeats and incorporates paragraphs 1-189 as if fully set forth herein.

191.    The '467 patent claims are not entitled to a priority date earlier than October 28, 2021.

192.    Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 28, 2021.

193.    In the event the '467 patent or any claim of the '467 patent is afforded a priority date before October 28, 2021, then such claim of the '467 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the '467 patent purports to claim priority.

194.    Prior to October 28, 2021, the pending specification and claims of the '080 application (to which the '467 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompassing Moderna's

mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

195.    Prior to October 28, 2021, no publicly available information regarding the Novartis Family 2 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) encompassing Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

196.    During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

197.    Any enforcement of any claim of the '467 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

198.    GSK engaged in unexplained and unreasonable delay in the prosecution of the '467 patent and any enforcement of any claim of the '467 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '467 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

## COUNT XVIII
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '534 PATENT DUE TO PROSECUTION LACHES

199.    Moderna repeats and incorporates paragraphs 1-198 as if fully set forth herein.

200.    The '534 patent claims are not entitled to a priority date earlier than October 28, 2021.

201.    Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to October 28, 2021.

202.    In the event the '534 patent or any claim of the '534 patent is afforded a priority date before October 28, 2021, then such claim of the '534 patent is unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the '534 patent purports to claim priority.

203.    Prior to October 28, 2021, the pending specification and claims of the '080 application (to which the '534 patent purports to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompassing Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

204.    Prior to October 28, 2021, no publicly available information regarding the Novartis Family 2 Asserted Patents disclosed, described or enabled a composition or formulation (or method or use thereof) encompassing Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.

205.    During the decade-long period of delay, Moderna invested significant time and resources into developing the mRESVIA® vaccine.

206.    Any enforcement of any claim of the '534 patent against Moderna's mRESVIA® vaccine would not only unfairly prejudice Moderna's investment, but prejudice Moderna's ability to effectively bring its non-infringement defenses and counterclaims.  For example, as a result of the delay, certain prior art may no longer be available.  The delay also unfairly afforded GSK the

opportunity to draft claims in view of new information and products that did not exist at the time of the initial filing.

207.    GSK engaged in unexplained and unreasonable delay in the prosecution of the '534 patent and any enforcement of any claim of the '534 patent against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The '534 patent is therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

## **RELIEF REQUESTED**

WHEREFORE, Moderna respectfully requests that the Court enter a Judgment and Order in their favor and against GSK as follows:

(a) Dismissing GSK's Complaint with prejudice and denying each and every prayer for relief contained therein;

(b) Declaring that Moderna does not infringe any claim of the Patents-in-Suit;

(c) Declaring that the manufacture, use, offer to sell, and sale of the mRESVIA® vaccine within the United States, and its importation into the United States, does not infringe any claim of the Patents-in-Suit;

(d) Declaring that the claims of the Patents-in-Suit are invalid;

(e) Declaring that the Patents-in-Suit are unenforceable due to prosecution laches;

(f) Declaring that GSK and its agents, representatives, attorneys, and those persons in active concert or participation with them who receive actual notice thereof, be preliminarily and permanently enjoined from threatening or initiating infringement litigation against Moderna or any of their customers, dealers, or suppliers, or any prospective or present sellers, dealers, distributors, or customers of Moderna, or charging any of them either orally or in writing with infringement of the Patents-in-Suit;

(g) Awarding Moderna its attorneys' fees, together with costs and disbursements, including because this case is exceptional under 35 U.S.C. § 285; and

(h) Awarding such other and further relief as the Court deems justified.

\*     \*     \*

## ANSWER

Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. (collectively, "Moderna"), hereby answer the Complaint for Patent Infringement of Plaintiffs GlaxoSmithKline Biologicals SA ("GSK Biologicals") and GlaxoSmithKline LLC ("GSK LLC") (collectively, "GSK"), as follows:

## INTRODUCTION

1.     GSK Biologicals researches, develops, and manufactures innovative vaccines and specialty medicines to serve patients and healthcare professionals worldwide. GSK Biologicals is the sole owner and assignee of numerous United States patents directed to compositions and formulations comprising lipids and messenger ribonucleic acid ("mRNA") molecules encoding a protein immunogen, methods for obtaining the same, and methods of administering the same to elicit an immune response against the immunogen. *See* Exhibits 1–6 (the "Patents-in-Suit," as defined in paragraph 8, infra).

**ANSWER**: Moderna admits that GSK Biologicals is listed as the assignee on the face of the Patents-in-Suit. Moderna otherwise lacks the knowledge and information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1 and therefore denies them.

2.     In 2008, the named inventors of the Patents-in-Suit, Christian Mandl, Andrew Geall, Gillis Otten, and Katrin Ramsauer—accomplished scientists with M.D.'s and/or Ph.D.'s and years of research experience immunology, biochemistry, microbiology, or formulation science—set their sights on developing mRNA vaccines. Working under the leadership of vaccinologist Christian Mandl (the "Mandl team"), these talented individuals discovered, *inter alia*, lipid formulations encapsulating mRNA molecules encoding viral protein immunogens that, following administration, provide protection against infection by the corresponding virus. The Mandl team described the inventions now claimed in the Patents-in-Suit, in patent applications filed in 2010.

**ANSWER**: Moderna denies that "[the Mandl team] discovered, *inter alia*, lipid formulations encapsulating mRNA molecules encoding viral protein immunogens that, following

42

administration, provide protection against infection by the corresponding virus." Moderna further denies that "[t]he Mandl team described the inventions now claimed in the Patents-in-Suit, in patent applications filed in 2010." Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies the allegations.

3.      A major advance of the Mandl team's inventions over preexisting vaccine technologies is the speed with which new vaccine candidates can be made and tested—simply by altering the mRNA molecules to encode for a new immunogen. Indeed, in response to the 2013 influenza outbreak in China, the Mandl team created a new mRNA vaccine candidate in just eight days—"in real time the moment that [influenza] sequence was available." Exhibit 7 (Dolgin, "Injection of Hope," *Nature* 574, S10 (2019)) at S11. The prestigious science journal *Nature* recognized this achievement as "[t]he current speed record" of vaccine development. *Id*.

**ANSWER**: Moderna admits that Exhibit 7, which purports to be an article authored by Elie Dolgin, titled "Injection of Hope," and dated October 17, 2019, states that "in 2013 in response to an influenza outbreak in China: it took scientists at Novartis just eight days to make a vaccine candidate." Moderna further admits that Exhibit 7 includes "[i]t happened in real time the moment that sequence was available." Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 3 and therefore denies the allegations.

4.      The Mandl team's innovation has been revolutionary for vaccine development. *Nature* noted in 2021 that "[e]very mRNA company now uses some variation of [the Mandl team's] delivery platform and manufacturing system[.]" Exhibit 8 (Dolgin, "The Tangled History of mRNA Vaccines," *Nature* 597, 318 (2021) ("Dolgin (2021)")) at 323.

**ANSWER**: Moderna admits that Exhibit 8, which purports to be an article authored by Elie Dolgin, titled "The Tangled History of mRNA Vaccines," and dated September 16, 2021, states that "[e]very mRNA company now uses some variation of this LNP delivery platform and manufacturing system — although who owns the relevant patents remains the subject of legal dispute." Exhibit 8 at 323. Further answering, at least because of the scope, breadth, and

vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and therefore denies the allegations.

5.      GSK's patented inventions provide the foundation for Moderna's mRNA vaccine portfolio, including its mRESVIA® respiratory syncytial virus (RSV) fusion glycoprotein (F protein) mRNA vaccine, the product at issue in this action.  But Moderna has consistently failed to acknowledge how it applied the Mandl team's revolutionary platform to design and develop its vaccines.

**ANSWER**:  Moderna denies the allegations in Paragraph 5.

6.      Moderna stands to reap significant revenues by infringing GSK's Patents-in-Suit without ever obtaining a license.  GSK brings this suit to recover a reasonable royalty for Moderna's infringing sales of mRESVIA®.

**ANSWER**:  Moderna denies the allegations in Paragraph 6.

## NATURE OF THE ACTION

7.      This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et seq.*, seeking damages for Moderna's ongoing infringing manufacture, use, sale, marketing, offer for sale, and/or importation of mRESVIA® RSV F protein mRNA vaccine product (the "Accused Product," as further defined in paragraphs 35–44, *infra*).

**ANSWER**:  Insofar as Paragraph 7 contains legal conclusions, no response is required.  To the extent that a response is required, Moderna admits that GSK's Complaint is for alleged patent infringement arising under 35 U.S.C. § 100 *et seq.*, but denies GSK is entitled to any relief. Moderna denies the remaining allegations in Paragraph 7.

8.      As alleged herein, Moderna's activity with respect to the Accused Product does and will directly infringe, actively induce infringement of, and/or contribute to the infringement of, one or more claims of the following GSK Biologicals patents directed to lipid-mRNA vaccine formulation technology: U.S. Patent Nos. 11,324,770 (the "'770 patent") (Exhibit 1), 11,690,861 (the "'861 patent") (Exhibit 2), 11,690,864 (the "'864 patent") (Exhibit 3), 11,717,529 (the "'529 patent") (Exhibit 4), 11,786,467 (the "'467 patent") (Exhibit 5), and 11,883,534 (the "'534 patent") (Exhibit 6) (collectively, the "Patents-in-Suit").

**ANSWER**:  Moderna denies the allegations in Paragraph 8, including any and all allegations of infringement of any valid and enforceable claim of the Patents-in-Suit, and any allegation that GSK is entitled to any relief.

9.     At all relevant times, GSK Biologicals has lawfully owned, and continues to lawfully own, all rights, title, and interest in the Patents-in-Suit, including the right to sue and recover for past infringement.

**ANSWER**:  Moderna lacks the knowledge and information sufficient to form a belief

about the truth of the allegations in Paragraph 9 and therefore denies them.

## THE PARTIES

10.     Plaintiff GSK Biologicals is a corporation organized and existing under the laws of Belgium, with its principal place of business at Avenue Fleming 20, 1300 Wavre, Belgium.  GSK Biologicals is the owner of all patents asserted in this litigation.

**ANSWER**:  Moderna admits that GSK Biologicals purports to be a corporation organized

and existing under the laws of Belgium, with its principal place of business at Avenue Fleming 20,

1300 Wavre, Belgium. Moderna otherwise lacks the knowledge or information sufficient to form

a belief about the truth of the remaining allegations in Paragraph 10 and therefore denies them.

11.     Plaintiff GSK LLC is a limited liability corporation organized and existing under the laws of Delaware, with its principal place of business at 2929 Walnut Street, Suite 1700, Philadelphia, PA 19104.  GSK LLC produces and distributes pharmaceutical products.  GSK Biologicals has designated GSK LLC as the exclusive distributor of any products covered by the Patents-in-Suit in the United States.

**ANSWER**:  On information and belief, Moderna admits that GSK LLC purports to be a

Delaware corporation with a principal place of business at 2929 Walnut Street, Suite 1700,

Philadelphia, PA 19104.  Moderna otherwise lacks the knowledge or information sufficient to form

a belief as to the truth of the allegations in Paragraph 11 and therefore denies the allegations.

12.     On information and belief, Defendant Moderna, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna, Inc., itself and through its subsidiaries, including ModernaTX, Inc. and Moderna US, Inc., and business partners, develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Product in the State of Delaware and throughout the United States, for use in the State of Delaware and throughout the United States.

**ANSWER**:  Moderna admits that Moderna, Inc. is a Delaware corporation with a principal

place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna further admits

that ModernaTX, Inc. and Moderna US, Inc. are wholly owned subsidiaries of Moderna, Inc. Moderna denies the remaining allegations in Paragraph 12.

13.    On information and belief, Defendant ModernaTX, Inc. is a wholly owned subsidiary of Moderna, Inc. ModernaTX, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142. ModernaTX, Inc. is the Biologics License Application (BLA) holder for the Accused Product (BLA 125796) in the United States. Exhibit 9 (May 31, 2024, FDA Approval Letter) at 1. ModernaTX, Inc., itself and through its parent company, Moderna, Inc., and sister company, Moderna US, Inc., develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Product in the State of Delaware and throughout the United States, for use in the State of Delaware and throughout the United States.

**ANSWER**:  Moderna admits that ModernaTX, Inc. is a Delaware corporation with a principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna further admits that ModernaTX, Inc. is a wholly owned subsidiary of Moderna, Inc. and is the holder of BLA No. 125796.  Moderna denies the remaining allegations in Paragraph 13.

14.    On information and belief, Defendant Moderna US, Inc. is a wholly owned subsidiary of Moderna, Inc. Moderna US, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 325 Binney Street, Cambridge, Massachusetts 02142. Moderna US, Inc. itself and through its parent company, Moderna, Inc., and sister company, ModernaTX, Inc., develops, manufactures, imports, markets, distributes, offers to sell, and/or sells the Accused Product in the State of Delaware and throughout the United States, for use in the State of Delaware and throughout the United States.

**ANSWER**:  Moderna admits that Moderna US, Inc. is a Delaware corporation with a place of business at 325 Binney Street, Cambridge, Massachusetts 02142.  Moderna further admits that Moderna US, Inc. is a wholly owned subsidiary of Moderna, Inc.  Moderna denies the remaining allegations in Paragraph 14.

15.    On information and belief, Defendants Moderna Inc., ModernaTX, Inc., and Moderna US, Inc. are agents of one another or work in concert with each other regarding the development, regulatory approval, manufacturing, marketing, offering for sale, sale, or distribution of the Accused Product in the United States.

**ANSWER**:  Insofar as Paragraph 15 contains legal conclusions, no response is required. To the extent that a response is required, Moderna denies the remaining allegations in Paragraph 15.

## JURISDICTION AND VENUE

16.     This action arises under the patent laws of the United States, including 35 U.S.C. § 100 *et seq.* generally and 35 U.S.C. § 271 *et seq.*

**ANSWER**:  Insofar as Paragraph 16 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that GSK's Complaint is for alleged patent infringement arising under the patent laws of the United States, including 35 U.S.C. § 100 *et seq.* and 35 U.S.C. § 271 *et seq.*, but denies GSK is entitled to any relief.  Moderna denies the remaining allegations in Paragraph 16.

17.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**:  Insofar as Paragraph 17 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest that, solely for purposes of this action, the Court has subject matter jurisdiction over this action.  Moderna denies the remaining allegations in Paragraph 17.

18.     This Court has personal jurisdiction over Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. because each is organized under the laws of Delaware.

**ANSWER**:  Insofar as Paragraph 18 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest the Court has personal jurisdiction over Moderna solely for purposes of this action only.  Moderna denies the remaining allegations in Paragraph 18.

19.     This Court also has personal jurisdiction over Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. because, on information and belief, they offer for sale and/or sell the Accused Product in Delaware and transact business within Delaware relating to and giving rise to GSK's claims.  This Court also has personal jurisdiction over Defendants Moderna,

Inc., ModernaTX, Inc., and Moderna US, Inc. because, in connection with its offers for sale and/or sales of the Accused Product as well as offers for sale and sales of other mRNA vaccine products, they have engaged in and maintain systematic and continuous business contacts within Delaware.

**ANSWER**:  Insofar as Paragraph 19 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest personal jurisdiction solely for purposes of this action only.  Moderna denies that mRESVIA® infringes the Patents-in-Suit directly or indirectly, either literally or by application of the doctrine of equivalents.  Moderna denies the remaining allegations in Paragraph 19.

20.    Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. have consented to this Court's exercise of personal jurisdiction in other litigations involving mRNA vaccine products, including in *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 22-cv-335-CFC and *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 23-cv-580-CFC, and Defendants Moderna, Inc. and ModernaTX, Inc. have also consented to this Court's jurisdiction in litigation involving mRNA vaccine products in *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-cv-252-MSG.

**ANSWER**:  Insofar as Paragraph 20 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest personal jurisdiction solely for purposes of this action only.  Moderna denies the remaining allegations in Paragraph 20.

21.    Venue is proper in this judicial District pursuant to 28 U.S.C. § 1400(b) because Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. are entities organized and existing under the laws of the State of Delaware and therefore reside in Delaware for purposes of venue.

**ANSWER**:  Insofar as Paragraph 21 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest that Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. are corporations organized and existing under the laws of the State of Delaware, and that the venue is proper solely for purposes of this action only. Moderna denies the remaining allegations in Paragraph 21.

22.    Defendants Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. have consented to this Court as a proper venue in other litigations involving mRNA vaccine products, including in *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 22-cv-335-CFC and *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 23-cv-580-CFC, and Defendants

Moderna, Inc. and ModernaTX, Inc. have also consented to this Court as a proper venue in litigation involving mRNA vaccine products in *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-cv-252-MSG.

**ANSWER**:  Insofar as Paragraph 22 contains legal conclusions, no response is required. To the extent that a response is required, Moderna does not contest that the venue is proper solely for purposes of this action only.  Further answering, Moderna admits that Moderna, Inc., ModernaTX, Inc., and Moderna US, Inc. were named defendants in the complaints filed in *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 22-cv-335-CFC and *Alnylam Pharmaceuticals, Inc. v. Moderna, Inc. et al.*, C.A. No. 23-cv-580-CFC, and Moderna, Inc. and ModernaTX, Inc. were named defendants in the complaint filed in *Arbutus Biopharma Corp. et al. v. Moderna, Inc. et al.*, C.A. No. 22-cv-252-MSG.  Moderna denies the remaining allegations in Paragraph 22.

## BACKGROUND

### A.    The [Purportedly] Claimed Inventions

23.    In conventional vaccines, a protein (or "polypeptide") is administered to a patient, is recognized as foreign in the body, and triggers the patient's immune response (hence the protein is an "immunogen").  With mRNA vaccines, mRNA that encodes for an immunogenic protein is administered to a patient.  Inside a patient's cells, existing cellular machinery reads the instructions encoded by the mRNA to produce the protein—a process called "translation"—and the protein triggers various responses from the patient's immune system.  *See* Exhibit 1 ('770 Patent) at col. 13, ll. 36–45 ("RNA molecules used with the invention encode a polypeptide immunogen.  After administration of the RNA the immunogen is translated in vivo and can elicit an immune response in the recipient. … The immune response may comprise an antibody response … and/or a cell-mediated immune response.").

**ANSWER**:  Moderna admits that Exhibit 1 (which purports to be the '770 patent) states "RNA molecules used with the invention encode a polypeptide immunogen.  After administration of the RNA the immunogen is translated in vivo and can elicit an immune response in the recipient." The remaining allegations in Paragraph 23 purport to rely on Exhibit 1 for the stated averments and, to the extent it is presented to suggest that the Patents-in-Suit disclose, describe, or enable

49

subject matter that encompasses Moderna's mRESVIA®, or that the Patents-in-Suit comply with statutory prerequisites of 35 U.S.C. §§ 101, 102, 103, and/or 112, those allegations are denied. Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23 and therefore denies the allegations.

24.    By 2008, there were many well-understood and significant hurdles to employing mRNA in vaccines. Getting mRNA molecules, intact, from where they are made in the laboratory into a patient's cells where they could be translated had historically presented seemingly insurmountable challenges. mRNA is chemically fragile—it can degrade quickly even in a controlled laboratory environment. It needs to be protected from the moment of preparation through formulation, storage, handling, administration, and even inside the body following administration. And even if the mRNA remains intact following administration to a patient, the mRNA still needs some way to get into the cell so it can be translated, and the immunogenic protein can effectuate an immune response. *See* Exhibit 8 (Dolgin (2021)) at 320 ("In the 1990s and for most of the 2000s, nearly every vaccine company that considered working on mRNA opted to invest its resources elsewhere. The conventional wisdom held that mRNA was too prone to degradation[.]"); Exhibit 10 (Stanton *et al.*, "Messenger RNA as a Novel Therapeutic Approach," *RNA Therapeutics (Topics in Med. Chem.* Vol. 27), 237 (2017) ("Stanton (2017)")) at 237 ("The concept of mRNA as a therapeutic platform has historically been ignored owing to challenges in oligonucleotide delivery and, maybe more importantly, the perceived shortcomings of mRNA with regard to stability and immunogenicity.").

**ANSWER**: Moderna admits that Exhibit 8 states that "[i]n the 1990s and for most of the 2000s, nearly every vaccine company that considered working on mRNA opted to invest its resources elsewhere. The conventional wisdom held that mRNA was too prone to degradation[.]" Moderna further admits that Exhibit 10 states "[t]he concept of mRNA as a therapeutic platform has historically been ignored owing to challenges in oligonucleotide delivery and, maybe more importantly, the perceived shortcomings of mRNA with regard to stability and immunogenicity." Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 and therefore denies the allegations.

25.    Despite unsuccessful efforts by others dating back decades, in 2008, Christian Mandl focused his talented team on overcoming the hurdles that had long-hindered development

of mRNA vaccines.  Exhibit 8 (Dolgin (2021)) at 323.  Through extensive experimentation, perseverance, and the unique insights and preferences of these scientists, the Mandl team discovered the novel lipid-mRNA formulations and methods for their preparation and use to raise an immune response that are described and claimed in the Patents-in-Suit.  The Mandl team's seminal publication on this work has been cited over 500 times and viewed over 60,000 times.  *See* Exhibit 11 (Geall *et al.*, "Nonviral delivery of self-amplifying RNA vaccines," *Proc. Natl. Acad. Sci.* 109(36), 14604-609 (2012) with supplementary information).[3]

**ANSWER**:  Moderna denies that "the Mandl team discovered . . . novel lipid-mRNA formulations and methods for their preparation and use . . ." and that the Patents-in-Suit sufficiently disclose, describe, enable or claim such compositions, formulations, methods and/or uses. Moderna further states that Geall 2012, like the Patents-in-Suit, is directed to an entirely different RNA technology and different lipid delivery system than the modified mRNA platform and LNP technology (including Moderna's proprietary SM-102 lipid and LNPs containing SM-102) used in Moderna's mRESVIA®.  Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 25 and therefore denies the allegations.

26.    The United States government immediately recognized the value of the Mandl team's work.  In the wake of the 2009 H1N1 flu pandemic virus outbreak, the Defense Advanced Research Projects Agency ("DARPA"), awarded a contract to fund further research and development by the Mandl team into mRNA vaccine technology for quick deployment in response to new pandemic threats.  Exhibit 12 (Lizotte, "Novartis Receives $14M Award from DARPA," Global Biodefense, January 31, 2012) (describing award of DARPA Contract HR0011-12-3-0001).

**ANSWER**:  Moderna admits that Exhibit 12, which purports to be an article authored by Stephanie Lizotte, titled "Novartis Receives $14M Award from DARPA," and dated January 31, 2012, states that "Novartis Vaccines and Diagnostics, Inc., . . . is being awarded a $14,189,402 technology investment agreement . . . to perform a research and development program designed to develop a self-replicating RNA vaccine platform."  Exhibit 12 at 2.  Further answering, at least

---

[3] Metrics available at https://www.pnas.org/doi/full/10.1073/pnas.1209367109.

because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26 and therefore denies the allegations.

27.     In 2017, years before commercializing any mRNA vaccine, Moderna researchers recognized the Mandl team's published work as "the first" to employ lipid formulations to "form stable particles with mRNA and effectively release the mRNA for protein translation *in vivo*." Exhibit 10 (Stanton (2017)) at 241.

**ANSWER**:  Moderna admits that the quoted language in Paragraph 27 appears in Exhibit 10.  Moderna denies Paragraph 27 to the extent it suggests that the Mandl team discovered or invented (or the Patents-in-Suit disclose, describe or enable) novel lipid-mRNA formulations and methods for their preparation and use.  Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 and therefore denies the allegations.

28.     This robust platform has proven suitable for obtaining an immune response from a wide range of immunogen-encoding mRNA molecules, manifest through its adoption by "[e]very mRNA company."  Exhibit 8 (Dolgin (2021)) at 323.

**ANSWER**:  Moderna admits that the quoted language in Paragraph 28 appears in Exhibit 8.  To the extent that the allegations of Paragraph 28 suggest that the Patents-in-Suit disclose, describe, or enable subject matter that encompasses Moderna's mRESVIA®, or that the Patents-in-Suit comply with statutory prerequisites of 35 U.S.C. §§ 101, 102, 103, and/or 112, those allegations are denied.  Moderna further denies Paragraph 28 to the extent it suggests that the Mandl team discovered or invented (or the Patents-in-Suit disclose, describe or enable) a "robust platform" "proven suitable for obtaining an immune response from a wide range of immunogen-encoding mRNA molecules."  Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 and therefore denies the allegations.

**B.     GSK Biologicals' Acquisition of the Mandl Team's [Purported] Inventions**

29.     At the time that the Mandl team began working on mRNA vaccines, they were employed by Novartis AG or subsidiaries (collectively, "Novartis").  In 2015, GSK Biologicals acquired a substantial portion of Novartis's global vaccines business.  *See* Exhibit 13 (March 2, 2015, GSK press release).  In that transaction, GSK obtained, among other things, the Mandl team's inventions, including all rights to the parent applications to the Patents-in-Suit.

**ANSWER**:  Moderna admits that Exhibit 13 bears the date March 2, 2015, and states "GSK has acquired Novartis's global Vaccines business (excluding influenza vaccines)."  To the extent that the allegations of Paragraph 29 suggest that the Patents-in-Suit disclose, describe, or enable subject matter that encompasses Moderna's mRESVIA®, or that the Patents-in-Suit comply with statutory prerequisites of 35 U.S.C. §§ 101, 102, 103, and/or 112, those allegations are denied.  Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 and therefore denies the allegations.

**C.     Moderna's [Alleged] Use and Knowledge of the Mandl Team's Patented Technology**

30.     Moderna was aware of the Mandl team's mRNA vaccine innovations long before it ever developed and commercialized the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 30.

31.     Indeed, years before seeking commercial marketing approval for the Accused Product, Moderna obtained technical know-how relating to GSK Biologicals's mRNA vaccine platform technology by hiring several former Novartis and GSK employees who had first-hand knowledge of the Mandl team's innovations.

**ANSWER**:  Moderna denies the allegations in Paragraph 31.

32.     Since at least 2013, Moderna has cited—indeed, incorporated the full content of— Mandl team patent filings within the text of its own patent applications.  *See, e.g.*, Exhibit 14 (excerpts from International Publication No. WO2014/152211) at 150–151 ("[T]he nucleic acid molecules, modified nucleic acid molecules and/or mmRNA encoding an immunogen may be delivered to cells to trigger multiple innate response pathways (see International Pub. No. WO2012006377 … and US Patent Publication No. US20130177639; each of which is herein incorporated by reference in its entirety).");  *see also* Exhibit 15 (printout of patent filings and patent applications citing to patents or patent applications in the family of the '770, '861, '864 and

'529 Patents-in-Suit from the Derwent Patents Citation Index, preserved May 30, 2024[4]); Exhibit 17 (printout of patent filings and patent applicants citing to patents or patent applications in the family of the '467 and '534 Patents-in-Suit from the Derwent Patents Citation Index, preserved April 19, 2024).[5]  And, as noted, in 2017, Moderna researchers cited the Mandl team's seminal publication on this work as the first successful use of lipid-mRNA formulations for *in vivo* protein translation.  Exhibit 10 (Stanton (2017)) at 241.

**ANSWER**:  Moderna admits that Exhibit 14, which purports to be a copy of International Publication No. WO2014/152211, states that "[a]s a non-limiting example, the nucleic acid molecules, modified nucleic acid molecules and/or mmRNA encoding an immunogen may be delivered to cells to trigger multiple innate response pathways (see International Pub. No. WO2012006377 and WO2013087083 and US Patent Publication No. US20130177639; each of which is herein incorporated by reference in its entirety)."  Exhibit 14 at 150-51.  To the extent that the allegations of Paragraph 32 suggest that the Patents-in-Suit disclose, describe, or enable subject matter that encompasses Moderna's mRESVIA®, or that the Patents-in-Suit comply with statutory prerequisites of 35 U.S.C. §§ 101, 102, 103, and/or 112, those allegations are denied.  Moderna further denies Paragraph 32 to the extent it suggests that the Mandl team discovered or invented (or the Patents-in-Suit disclose, describe or enable) novel lipid-mRNA formulations and methods for their preparation and use.  Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 and therefore denies the allegations.

33.  Moderna's mRESVIA® RSV F mRNA vaccine product exploits the fundamental technologies invented by the Mandl team and claimed in the Patents-in-Suit.  Moderna leveraged

---

[4]  Information on the Derwent Patents Citation Index is available at https://clarivate.com/products/ip-intelligence/ip-data-and-apis/derwent-patents-citation-index/.  Similar information is available publicly through Google Patents.  *See*, *e.g.*, Exhibit 16 (Google Patents, Cite By section for the '770 patent, available at https://patents.google.com/patent/US11324770B2/en?oq=US11324770B2, preserved August 3, 2023).

[5] Similar information is available publicly through Google Patents.  *See*, *e.g.*, Exhibit 18 (Google Patents, Cited By section, for the '467 patent, available at https://patents.google.com/patent/US11786467B2/en?oq=11786467; preserved July 3, 2024).

the public disclosures of the Mandl team's work and the specialized knowledge of former Novartis and GSK employees to design and develop the Accused Product.  But Moderna did not acquire a license to practice the GSK inventions before or since manufacturing and obtaining approval to commercially market the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 33.

34.    Moderna has had knowledge of and specific notice of its infringement of the Patents-in-Suit through its actions in the United States with respect to the Accused Product at least since October 11, 2024, by communications with GSK.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 34 contains legal conclusions, no response is required.

To the extent a response is required, and the allegations of Paragraph 34 purport to rely on Exhibit

56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024,

the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 34.

## MODERNA'S [ALLEGED] INFRINGING ACTIVITIES

35.    Moderna's manufacture, use, sale, marketing, offer for sale, and/or importation of the Accused Product, mRESVIA®, directly and indirectly infringes and/or will infringe the Patents-in-Suit.

**ANSWER**:  Moderna denies the allegations in Paragraph 35.

### A.    The Accused Product

36.    The Accused Product "consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA" provided as a single-dose suspension in a prefilled syringe.  *See, e.g.*, Exhibit 19 (FDA Chemistry, Manufacturing, and Controls (CMC) Review Memo) at i; Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2.

**ANSWER**:  Insofar as Paragraph 36 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that Exhibit 19, which purports to be a

copy of the CBER CMC BLA Review Memorandum, states that "MRESVIA is a vaccine that

consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA (mRNA-1345) provided as a

single-dose, preservative-free, white to off-white, liquid suspension in a prefilled, sterile, 1 mL

cyclic olefin copolymer (COC) syringe with plastic tip cap and fluoropolymer-coated, halobutyl

plunger stopper."  Exhibit 19 at i.  To the extent that the allegations of Paragraph 36 suggest that

the Patents-in-Suit disclose, describe, or enable subject matter that encompasses Moderna's

mRESVIA®, or that the Patents-in-Suit comply with statutory prerequisites of 35 U.S.C. §§ 101,

102, 103, and/or 112, those allegations are denied.  Further answering, at least because of the

scope, breadth, and vagueness of these allegations, Moderna lacks the knowledge or information

sufficient to form a belief as to the truth of the allegations in Paragraph 36 and therefore denies the

allegations.

37.     On information and belief, and as set forth by example, *infra*, Moderna uses the
same composition of mRNA, composition of lipid particles, and methods of manufacture for the
Accused Product, whether applying for commercial marketing authorization or approval by the
Food and Drug Administration ("FDA") in the United States or the European Medicines Agency
("EMA") in Europe.

**ANSWER**:  Moderna denies the allegations in Paragraph 37.

38.     Moderna and FDA refer to the mRNA in the Accused Product as "RNA-100-
AR02."  *See, e.g.*, Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, 13.

**ANSWER**:  Insofar as Paragraph 38 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that the mRNA in mRESVIA® has been

referred to as "RNA-100-AR02."  Moderna denies the remaining allegations in Paragraph 38.

39.     Moderna and FDA refer to the lipid particles in the Accused Product as "LNP-100-
AR02."  *See, e.g.*, Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, 13.

**ANSWER**:  Insofar as Paragraph 39 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that the LNP in mRESVIA® has been

referred to as LNP-100-AR02.  Moderna denies the remaining allegations in Paragraph 39.

40.     Moderna, FDA, and EMA refer to the Accused Product as "mRNA-1345" or
"mRNA-1345 DP" (for Drug Product).  *See, e.g.*, Exhibit 19 (FDA CMC Review Memo) at, *e.g.*,
11, 165; Exhibit 21 (excerpt from May 31, 2024, FDA List of Licensed Products); Exhibit 22 (May
31, 2024, Moderna press release) at 1–3; Exhibit 23 (May 15, 2023, EMA Study Decision) *passim*;
Exhibit 24 (March 27, 2024, Moderna Vaccine & Business Updates Presentation ("Moderna
Vaccine Updates")) at 3, 4, 76–82, 84–95; Exhibit 25 (February 29, 2024, Moderna Advisory
Committee on Immunization Practices (ACIP) for the Centers for Disease Control and Prevention
(CDC) Presentation ("Moderna ACIP Presentation")) *passim*; Exhibit 26 (February 15, 2024,

Moderna Respiratory Syncytial Virus Foundation Conference Presentation ("Moderna ReSViNET Presentation)) *passim*; Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) *passim*.

**ANSWER**: Insofar as Paragraph 40 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that mRESVIA® has been referred to

as mRNA-1345 or mRNA-1345 DP. Moderna denies the remaining allegations in Paragraph 40.

41.    On information and belief, the mRNA in the Accused Product includes, among other things, a 5' cap, a 5' untranslated region (UTR), an open reading frame (ORF) region coding for the RSV F protein, a 3' untranslated region, and a 3' polyA tail. *See, e.g.*, Exhibit 28 (Moderna International Patent Publication No. WO/2022/221336 A1 ("Moderna WO336 Publication")) at 73–79 ("Example I – Phase I Study" using mRNA-1345), 80–81 (Table I. Vaccine Sequences, Prefusion RSV F Protein dCT Variant) (providing the general structure of the "Cap" ("7mG(5')ppp(5')N1mpNp", where N represents any nucleotide; *see infra* for the specific cap Moderna used in its COVID-19 mRNA vaccine products), the sequence of the "5' UTR" (SEQ ID NO: 33), the sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34), the sequence of the "3' UTR" (SEQ ID NO: 35), and the length of the "PolyA tail" ("100 nt")); *see also* Exhibit 29 (Chaudhary *et al.*, "mRNA vaccines for infectious diseases: principles, delivery and clinical translation," *Nature Rev. Drug Disc.* 20, 817–838 (2021) ("Chaudhary (2021)")) at 818 ("mRNA vaccines comprise synthetic mRNA molecules that direct the production of the antigen that will generate an immune response. In vitro-transcribed (IVT) mRNA mimics the structure of endogenous mRNA, with five sections, from 5' to 3': 5' cap, 5' untranslated region (UTR), an open reading frame that encodes the antigen, 3' UTR and a poly(A) tail (Fig. 1)."), 819 (Fig. 1a, reproduced in part, *infra*); January 18, 2023, CNBC Television Interview, "Moderna CEO: We're preparing our FDA filing for our RSV vaccine," ("2023 CNBC Interview")[6] at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing ocess, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 30 (U.S. Patent No. 10,703,789 Spikevax® Patent Term Extension Application ("'789 PTE"), filed March 30, 2022) at 1–3 (providing the specific structure of the "Cap" ("m7G-5'-ppp-5'-Gm") used in Moderna's COVID-19 mRNA vaccine products; Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 11 ("The active substance RNA-100-AR02 (internal name CX-032753), encodes for the respiratory syncytial virus (RSV) F glycoprotein stabilised in the pre-fusion conformation. The molecular sequence of RNA-100-AR02, including the 5' cap, the 5' untranslated region (UTR), the Open Reading Frame (ORF), the 3' UTR, and the 3' polyA tail, is provided in the dossier.").



_____
[6] Available at https://www.youtube.com/watch?v=FzgSE3yG-7E, last accessed September 27, 2024.

**ANSWER**:  Insofar as Paragraph 41 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that Exhibit 27, which purports to be a European Medicines Agency mRESVIA® Assessment Report, dated June 27, 2024, states that "[t]he molecular sequence of RNA-100-AR02, including the 5´ cap, the 5´ untranslated region (UTR), the Open Reading Frame (ORF), the 3´ UTR, and the 3´ polyA tail."  Exhibit 27 at 11. Further answering, at least because of the scope, breadth, and vagueness of these allegations, Moderna denies the remaining allegations in Paragraph 41.

42.    The mRNA in the Accused Product encodes an RSV F protein.  *See, e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein.)"); Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, i; Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna press release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 10 ("The active substance is a single-stranded 5' capped mRNA encoding the RSV-A glycoprotein F stabilised in the prefusion conformation.").

**ANSWER**:  Insofar as Paragraph 42 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that Exhibit 20, which purports to be the May 2024 mRESVIA® Package Insert, states that "[e]ach 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein.)."  Exhibit 20 at 6.  Moderna denies the remaining allegations in Paragraph 42.

43.    The lipid particles in the Accused Product contain the mRNA and the following four lipids:

| Chemical Name | Shorthand |
|---|---|
| heptadecan-9-yl 8-{(2-hydroxyethyl)[6-oxo-6-(undecyloxy)hexyl]amino}octanoate | "SM-102" |
| 1,2-dimyristoyl-rac-glycero-3-methoxypolyethylene glycol-2000 | "PEG2000-DMG" |
| 1,2-distearoyl-sn-glycero-3-phosphocholine | "DSPC" |
| cholesterol | (N/A) |

*See, e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl  8-((2-hydroxyethyl)  (6-oxo-6-(undecyloxy)  hexyl)  amino)  octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC] ….") (bracketed text in original); Exhibit 31 (Shaw *et al.*, "Safety, Tolerability, and Immunogenicity of an mRNA-Based Respiratory Syncytial Virus Vaccine in Healthy Young Adults in a Phase 1 Clinical Trial", *J. Infect. Dis.*, jiae035 (2024) with supplementary information ("Shaw, *JID*, jiae035 (2024)")) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs).  The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw *et al.*, "Safety and Immunogenicity of an mRNA-Based RSV Vaccine Including a 12-Month Booster in a Phase 1 Clinical Trial in Healthy Older Adults", *J. Infect. Dis.*, jiae081 (2024) with supplementary information ("Shaw, *JID*, jiae081 (2024)")) at 2 (similar); Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, i, 165; Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 10 ("Other ingredients are: SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino)octanoate), cholesterol, 1,2-distearoyl-sn-glycero-3-phosphocholine (DSPC), 1,2-dimyristoyl-rac-glycero-3-methoxypolyethylene glycol-2000 (PEG2000-DMG),").

    **ANSWER**:  Insofar as Paragraph 43 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that Exhibit 20, which purports to be the May 2024 mRESVIA® Package Insert, states that "[e]ach 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection."  Exhibit 20 at 6.  Moderna denies the remaining allegations in Paragraph 43.

44.     On information and belief, the same processes (apart from differences involved in setting the sequence of the mRNA open reading frame) are used to manufacture the mRNA, lipid particles, and finished suspension form of the Accused Product as are used to manufacture the mRNA, lipid particles, and finished suspension form of Moderna's Spikevax® SARS-CoV-2 vaccine products.  *See, e.g.*, Exhibit 33 (FDA CMC Statistical Review Memo) at, *e.g.*, 5 ("Moderna's RNA manufacturing process and process control strategy for vaccines, termed RNA-100, was originally developed for Moderna's vaccine Spikevax.  Moderna claimed that its prior experience has demonstrated the RNA-100 process and that the process control strategy established for Spikevax RNA manufacture could be applied to other RNA sequences, including mRNA-1345."); Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, 12 ("ModernaTX manufactures all mRNA vaccines according to the 100 process, using similar process steps, equipment, materials, with similar or identical in-process parameters …."); 2023 CNBC Interview at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 34 (January 17, 2023, Moderna press release) at 3 ("mRNA-1345 is an investigational RSV vaccine that consists of a single mRNA sequence encoding for a stabilized prefusion F glycoprotein.  The vaccine uses the same lipid nanoparticles (LNPs) as in the Moderna COVID-19 vaccines."); Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 12 ("The commercial active substance manufacturing process was developed in parallel with the clinical development programme and the process development is described in detail.  It is appreciated that certain aspects especially from the licensed vaccine Spikevax are used to support the process development of RNA-100-AR02.").

**ANSWER**:  Insofar as Paragraph 44 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that Exhibit 33 states that "Moderna's RNA manufacturing process and process control strategy for vaccines, termed RNA-100, was originally developed for Moderna's vaccine Spikevax.  Moderna claimed that its prior experience has demonstrated the RNA-100 process and that the process control strategy established for Spikevax RNA manufacture could be applied to other RNA sequences, including mRNA-1345." Exhibit 33 at 5.  Moderna denies the remaining allegations in Paragraph 44.

45.     The mRNA and lipid particles constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than in, the Accused Product and its process of manufacture.

**ANSWER**:  Moderna denies the allegations in Paragraph 45.

**B.**    **Moderna's [Alleged] Ongoing Infringement in the United States**

46.    On March 27, 2024, Moderna indicated in an investor presentation that it was "[a]waiting regulatory approvals; preparing for 2024 U.S. launch" of mRESVIA®.  Exhibit 24 (March 27, 2024, Moderna Vaccine Updates) at 76, 84.  In the same presentation, Moderna specified that it was "[e]xpecting to launch in the U.S. in 2024 after ACIP recommendation." *Id*. at 83.

**ANSWER**:  Insofar as Paragraph 46 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that Exhibit 24 states "[a]waiting regulatory approvals; preparing for 2024 U.S. launch."  Exhibit 24 at 76.  Moderna denies the remaining allegations in Paragraph 46.

47.    On May 2, 2024, Moderna CEO Stephane Bancel stated during television interviews that Moderna is "anticipating the launch of RSV vaccine very soon this spring." *See* May 2, 2024, CNBC Television Interview, "Moderna CEO Stephane Bancel on Q1 results:  The vaccine platform is coming along together very nicely" ("2024 CNBC Interview")[7] around 2:06; May 2, 2024, Bloomberg Television Interview, "Moderna Focused on Cutting Costs, RSV Vaccine" ("2024 Bloomberg Interview")[8] around 1:07.

**ANSWER**:  Insofar as Paragraph 47 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that in May 2024 it anticipated launching mRESVIA® in the United States in Spring 2024.  Moderna denies the remaining allegations in Paragraph 47.

48.    On May 10, 2024, in a press release, Moderna announced that FDA "expect to complete the review" of its mRESVIA® BLA "by the end of May."  Exhibit 35 (May 10, 2024, Moderna press release) at 1.  Moderna also stated that it "remains on track for mRNA-1345 to be reviewed at the CDC's Advisory Committee on Immunization Practices (ACIP) June 26–27, 2024, meeting, which is necessary prior to commercial launch." *Id*.

**ANSWER**:  Insofar as Paragraph 48 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that in May 2024 it anticipated launching

---

[7] Available at https://youtu.be/4qvz5dD88Fg?si=gJnv9pLmaO3IgEqA; last accessed September 27, 2024.
[8] Available at https://youtu.be/cxyLzd58xfU?si=QLMdtubItCHVFDwH; last accessed September 27, 2024.

mRESVIA® in the United States in Spring 2024.  Moderna denies the remaining allegations in

Paragraph 48.

49.    On May 31, 2024, FDA approved the use of the Accused Product "for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older."  Exhibit 9 (May 31, 2024, FDA Approval Letter); Exhibit 20 (May 2024, mRESVIA® Package Insert).  Moderna has also publicly disclosed its plan to file a supplemental Biologics License Application for U.S. approval in 2024 to expand the indication of mRESVIA to high-risk adults 18 to 59 years old.  Exhibit 36 (September 12, 2024, Moderna press release) at 3–4.

**ANSWER**:  Insofar as Paragraph 49 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that on May 31, 2024, FDA granted

approval of Moderna's BLA for mRESVIA® "for active immunization for the prevention of lower

respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60

years of age and older."  Exhibit 9 at 1.  Moderna denies the remaining allegations in Paragraph

49.

50.    Also on May 31, 2024, in a press release announcing FDA approval of the mRESVIA® BLA, Moderna stated that it "expects to have mRESVIA available for eligible populations in the U.S. by the 2024/2025 respiratory virus season."  Exhibit 22 (May 31, 2024, Moderna press release).

**ANSWER**:  Insofar as Paragraph 50 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that the quoted language in Paragraph

50 appears in Exhibit 22.  Moderna denies the remaining allegations in Paragraph 50.

51.    On June 26, 2024, the Advisory Committee on Immunization Practices (ACIP) for the Centers for Disease Control and Prevention (CDC) recommended that providers and other public health officials make a universal recommendation for adults 75 years and older and a riskbased recommendation for adults aged 60 to 74 years to receive a single dose of any FDA-approved RSV vaccine "in the late summer and early fall to optimize public health benefits."  *See* Exhibit 37 (2024-06-24 CDC ACIP Guidance 1) at 5–6; Exhibit 38 (2024-06-24 CDC ACIP Guidance 2) at 4–11; Exhibit 39 (2024-06-24 CDC ACIP Guidance 3).

**ANSWER**:  Insofar as Paragraph 51 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that the quoted language in Paragraph 51 appears in Exhibits 37.  Moderna denies the remaining allegations in Paragraph 51.

52.    On information and belief, Moderna now offers for sale and sells, the Accused Product in the United States.  *See* Exhibit 40 (August 1, 2024, Moderna press release) ("Following U.S. Food and Drug Administration (FDA) approval in May and the Advisory Committee on Immunization Practices (ACIP) recommendation in June, Moderna's RSV vaccine, mRESVIA®, has launched in the U.S. and deliveries are underway as of July 2024."); Exhibit 41 (Moderna Second Quarter 2024 Earnings Presentation) at 5, 27; Exhibit 42 (CDC Webpage Moderna RSV Vaccine Summary; preserved September 27, 2024)[9] (indicating that Moderna has implemented pre-ordering and reservation programs for mRESVIA®); Exhibit 43 (Modernadirect.com; preserved September 27, 2024) (permitting mRESVIA® orders to be placed through a Moderna website; also stating that mResvia® is currently shipping); Exhibit 44 (https://products.modernatx.com/mresviapro/ordering; preserved September 27, 2024) (similar).

**ANSWER**:  Insofar as Paragraph 52 contains legal conclusions, no response is required. To the extent that a response is required, Moderna denies the allegations in Paragraph 52.

53.    On information and belief, Moderna makes and/or has third-party manufacturers make, the mRNA, the lipid particles, and the finished form of the Accused Product, both inside and outside the United States.  *See, e.g.*, Exhibit 9 (May 31, 2024, FDA Approval Letter) at 1; Exhibit 24 (March 27, 2024, Moderna Vaccine Updates) at 132–135; Exhibit 45 (excerpts from February 24, 2023, Moderna, Inc. 2022FY Annual Report (Form 10-K)) at 32–33; Exhibit 46 (excerpts from February 23, 2024, Moderna, Inc. 2023FY Annual Report (Form 10-K)) at 24–25. Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 11–12.

**ANSWER**:  Insofar as Paragraph 53 contains legal conclusions, no response is required. To the extent that a response is required, Moderna admits that mRESVIA® is manufactured according to an FDA-approved process that may involve multiple facilities and/or manufacturing sites in order to meet the critical public health needs of patients.  Moderna denies the remaining allegations in Paragraph 53.

54.    On information and belief, Moderna packages, promotes, offers for sale and sells the Accused Product with labeling and prescribing information that instructs healthcare practitioners to "administer" the Accused Product to patients in the United States in accordance with the FDA-approved use.  Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2 ("2.3 Administration … Administer MRESVIA intramuscularly."); Exhibit 47

---

[9] Available at https://www.cdc.gov/vaccines/php/info-by-product/moderna-rsv-summary.html

(https://products.modernatx.com/mresvia; preserved September 27, 2024) (directing healthcare practitioners to the prescribing information for mRESVIA®).

**ANSWER**: Insofar as Paragraph 54 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna denies the allegations in Paragraph 54.

55.    On information and belief, healthcare practitioners will follow the instructions in Moderna's labeling and prescribing information when administering the Accused Product to patients in the United States.

**ANSWER**: Insofar as Paragraph 55 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna lacks the knowledge or information sufficient

to form a belief as to the truth of the allegations and therefore denies the allegations in Paragraph

55.

56.    When administered to patients in accordance with the FDA-approved use, the Accused Product elicits an immune response to, *inter alia*, the encoded RSV F protein. *See, e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 24 (March 27, 2024, Moderna Vaccine Updates) at 78–81, 83, 86, and 90; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3, 22–25, 27–31, 33–36, 39–40, 47; Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 10, 16–20, 27–29; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*; Exhibit 48 (Wilson *et al.*, "Efficacy and Safety of an mRNA-Based RSV PreF Vaccine in Older Adults", *New Engl. J. Med.* 389(24), 2233–44 (2023) with excerpts of the supplementary information ("Wilson (2023)")) *passim*; Exhibit 27 (June 27, 2024, EMA mResvia® Assessment Report) at 67 ("Antibody persistence:  One month after a single 50 µg mRNA-1345 vaccination, the nAb GMFR from baseline was 12.03 for RSV-A and 8.96 for RSV-B.  RSV nAb titres remained above baseline … demonstrating the persistence of the immune response.").

**ANSWER**: Insofar as Paragraph 56 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that "[e]ach 0.5 mL dose of MRESVIA

contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the

prefusion conformation (pre-F protein)."   Exhibit 20 at 6.   Moderna denies the remaining

allegations in Paragraph 56.

57.    The Accused Product constitutes a material part of, is especially made and especially adapted for, and is not a staple article or commodity of commerce suitable for substantial use in the United States other than in, its FDA-approved use.

**ANSWER**:  Insofar as Paragraph 57 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna denies the allegations in Paragraph 57.

58.    The first RSV F vaccine to be approved anywhere in the world was GSK's Arexvy®.  Arexvy® was approved by FDA in May 2023 for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older, the same indication later pursued by Moderna for mResvia®.  Exhibit 49 (May 2023, Arexvy® Package Insert).  Arexvy® was the result of more than 15 years of research and development.

**ANSWER**:  Insofar as Paragraph 58 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that (i) based on publicly available records, AREXVY® was approved by FDA in May 2023; and (ii) Exhibit 49, which purports to be the May 2023 Package Insert for AREXVY®, states that "AREXVY is indicated for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus in individuals 60 years of age and older."  Exhibit 49 at 1.  Moderna denies the remaining allegations in Paragraph 58.

59.    Moderna's "commercial focus [for mResvia®] is on reaching vaccinators in a highly competitive market."  Exhibit 40 (August 1, 2024, Moderna press release).

**ANSWER**:  Insofar as Paragraph 59 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that Exhibit 40 states that "[t]he Company is targeting the pharmacy segment in the U.S. and its commercial focus is on reaching vaccinators in a highly competitive market."  Exhibit 40 at 1.  Moderna denies the remaining allegations in Paragraph 59.

60.    Moderna stands to profit significantly and negatively impact GSK sales of Arexvy® through continued infringement of GSK Biologicals's Patents-in-Suit without taking a license.  *See, e.g.*, Exhibit 24 (March 27, 2024, Moderna Vaccine Updates) at 115–118 (anticipating a potential peak market of ~$10 billion for all RSV vaccine products); "2024 CNBC

Interview" around 2:45 (identifying Moderna's RSV vaccine launch as one of several upcoming "multibillion dollar opportunities").

**ANSWER**:  Insofar as Paragraph 60 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna denies the allegations in Paragraph 60.

61.    A real, substantial, and immediate controversy currently exists between GSK and Moderna concerning Moderna's infringement of the Asserted Patents.

**ANSWER**:  Insofar as Paragraph 61 contains legal conclusions, no response is required.

To the extent that a response is required, Moderna admits that there is a real, immediate, and justiciable controversy among the parties concerning non-infringement and invalidity of the Patents-in-Suit.  Moderna denies the remaining allegations in Paragraph 61.

## COUNT I

### (Infringement of the '770 Patent)

62.    GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs 1-61 of the Complaint.

63.    GSK Biologicals is the lawful owner by assignment of the '770 patent, which is entitled "Delivery of RNA to Trigger Multiple Immune Pathways" and was duly and legally issued by the U.S. Patent and Trademark Office on May 10, 2022.  A true and correct copy of the '770 patent is attached as Exhibit 1.

**ANSWER**:  Insofar as Paragraph 63 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that, according to the face of the patent, the '770 Patent is titled "Delivery of RNA to Trigger Multiple Immune Pathways," and issued on May 10, 2022.  Further answering, Moderna states that what purports to be a copy of the '770 patent is attached to the Complaint as Exhibit 1.  Moderna denies any remaining allegations contained in this Paragraph, including that the '770 patent was duly and legally issued and/or made a valid

claim of priority, as well as any suggestion or implication that the patent's claims are valid or enforceable or that Moderna infringes any claims of the '770 patent.

64.    Each claim of the '770 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 64.

65.    Moderna infringes, under 35 U.S.C. § 271(a), (b), and/or (c), one or more claims of the '770 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 65.

66.    Moderna has had knowledge of the '770 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 66 contains legal conclusions, no response is required. To the extent a response is required, and the allegations of Paragraph 66 purport to rely on Exhibit 56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024, the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 66.

67.    For purposes of illustration and example, claims 6 and 24 of the '770 patent recite:

> **6.** An immunogenic composition comprising lipid particles and mRNA molecules; the mRNA molecules comprising a 7'-methylguanosine, a first 5' ribonucleotide, and a sequence that encodes an immunogen; the first 5' ribonucleotide comprising a 2'-methylated ribose; the 7' methylguanosine linked 5'-to-5' to the first 5' ribonucleotide; the lipid particles comprising a PEGylated lipid, cholesterol, a first phospholipid, and a cationic lipid; the cationic lipid comprising a tertiary amine; the first phospholipid comprising an anionic phospholipid or a zwitterionic phospholipid; the lipid particles encapsulating at least half of the mRNA molecules; and the immunogenic composition being immunogenic in vivo by eliciting at least:  (i) an antibody response against the immunogen, (ii) a cell-mediated immune response against the immunogen, or (iii) both (i) and (ii).

> **24.** A method of eliciting an immune response in a vertebrate, the method comprising administering to the vertebrate an effective amount to elicit the immune response of the immunogenic composition of claim **6**; the immune response comprising the

antibody response against the immunogen or the cell-mediated immune response against the immunogen.

**ANSWER**:  Insofar as Paragraph 67 contains legal conclusions, no response is required.

To the extent a response is required, Moderna admits that claims 6 and 24 of the '770 patent recite

the above claim language.  Moderna otherwise denies the remaining allegations in Paragraph 67.

68.    The Accused Product is "an immunogenic composition comprising lipid particles and messenger ribonucleic acid (mRNA) molecules."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use.  Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein).  Each 0.5 mL dose of MRESVIA also contains the following ingredients:  a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNAbased vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation.  A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults …."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves the stability of the formulations."), 8 ("This phase 1 trial showed that mRNA-1345 is well tolerated and immunogenic in younger adults."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs. The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."), 8 ("This phase 1 trial demonstrated that the mRNA-1345 vaccine is well tolerated and immunogenic in adults aged 65 to 79 years …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar).

**ANSWER**:  Insofar as Paragraph 68 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 68.

69.     The mRNA molecules of the Accused Product comprise "a sequence that encodes an immunogen." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

**ANSWER**:  Insofar as Paragraph 69 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 69.

70.     The mRNA molecules of the Accused Product comprise a "7'-methylguanosine, a first 5' ribonucleotide … the first 5' ribonucleotide comprising a 2'-methylated ribose; the 7' methylguanosine linked 5'-to-5' to the first 5' ribonucleotide." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 28 (Moderna WO336 Publication) at 73–79 ("Example I – Phase I Study" using mRNA-1345), 80–81 (Table I. Vaccine Sequences, Prefusion RSV F Protein dCT Variant) (providing the structure of the "Cap" ("7mG(5')ppp(5')N1mpNp"), the sequence of the "5' UTR" (SEQ ID NO: 33), the sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34), the sequence of the "3' UTR" (SEQ ID NO: 35), and the length of the "PolyA tail" ("100 nt")); *see also* Exhibit 29 (Chaudhary (2021)) at 818 ("mRNA vaccines comprise synthetic mRNA molecules that direct the production of the antigen that will generate an immune response.  In vitro-transcribed (IVT) mRNA mimics the structure of endogenous mRNA, with five sections, from 5' to 3': 5' cap, 5' untranslated region (UTR), an open reading frame that encodes the antigen, 3' UTR and a poly(A) tail (Fig. 1)."), 819 (Fig. 1a); 2023 CNBC Interview around 2:21 ("And the other great news about mRNA is:  because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 30 ('789 PTE) at 1–3 (providing the specific structure of the "Cap" ("m7G-5'-ppp-5'-Gm") used in Moderna's COVID-19 mRNA vaccine products).

**ANSWER**:  Insofar as Paragraph 70 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 70.

71.     The lipid particles of the Accused Product comprise "a PEGylated lipid, cholesterol, a first phospholipid, and a cationic lipid; the cationic lipid comprising a tertiary amine; the first phospholipid comprising an anionic phospholipid or a zwitterionic phospholipid." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-

sn-glycero-3-phosphocholine [DSPC] ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 (similar); *see also* paragraphs 72–74, *infra*.

**ANSWER**: Insofar as Paragraph 71 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 71.

72.    SM-102 (in chemical nomenclature, heptadecan-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "cationic lipid comprising a tertiary amine." *See, e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov *et al.*, "Lipid Nanoparticles – From Liposomes to mRNA Vaccine Delivery, a Landscape of Research Diversity and Advancement," *ACS Nano* 15, 16982-17015 (2021) ("Tenchov (2021)"))[10] at 16989, 16993; Exhibit 50 (Schoenmaker *et al.*, "mRNA-lipid nanoparticle COVID-19 vaccines: Structure and Stability," *Intl. J. Pharm.* 601, 120586 (2021) ("Schoenmaker (2021)")) at 4, 8.

**ANSWER**: Insofar as Paragraph 72 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 72.

73.    Polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], also referred to as PEG2000-DMG (in chemical nomenclature, 1,2-dimyristoyl-rac-glyxero-3-methylpolyoxyethylene), is "a PEGylated lipid." *See, e.g.*, Exhibit 30 ('789 PTE) at 5, 10–11, Exhibit 3 thereto (Tenchov (2021)) at 16989; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**: Insofar as Paragraph 73 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 73.

74.    DSPC (in chemical nomenclature, 1,2-distearoyl-sn-glycero-3-phosphocholine) is a "phospholipid comprising … a zwitterionic phospholipid." *See, e.g.*, Exhibit 30 ('789 PTE) at 4, 6, 10, Exhibit 3 thereto (Tenchov (2021)) at 16989, and Exhibit 9 thereto (Kaur *et al.*, "Preparation, Characterisation and Entrapment of a Non-glycosidic Threitol Ceramide into Liposomes for Presentation to Invariant Natural Killer T Cells," *J. Phar. Sci.* 100 (7), 2724 (2011) ("Kaur (2011)"))[11] at 2728 ("the zwitterionic lipid DSPC"); Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

---

[10]  *See* Exhibit 51 for a higher quality copy of Tenchov (2021) including the Supporting Information.

[11]  *See* Exhibit 52 for a higher quality copy of Kaur (2011).

**ANSWER**:  Insofar as Paragraph 74 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 74.

75.    On information and belief, the lipid particles of the Accused Product "encapsulat[e] at least half of the mRNA molecules." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 19 (FDA CMC Review Memo) at 1 ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticleencapsulated mRNA-based vaccine…."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 50 (Schoenmaker (2021)) at 4 ("In mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%."); Exhibit 53 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70°C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%").

**ANSWER**:  Insofar as Paragraph 75 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 75.

76.    When administered to a patient in accordance with the FDA-approved use, the Accused Product is "immunogenic in vivo by eliciting at least: (i) an antibody response against the immunogen, (ii) a cell-mediated immune response against the immunogen, or (iii) both (i) and (ii)." *See* paragraph 56, *supra*; *e.g.*, Exhibit 48 (Wilson (2023)) at 2234 ("A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults; the vaccine induced neutralizing antibodies against both the RSV A and B subtypes …."), 2241–2242; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("mRNA-1345 boosted RSV neutralizing antibody titers … and RSV prefusion binding antibody concentrations"), 6–7, Supplementary Information *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 1 ("mRNA-1345 injection boosted RSV-A and RSV-B neutralizing antibody titers and prefusion F binding antibody (preF bAb) concentrations"), 8, Supplementary Information *passim*; Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**:  Insofar as Paragraph 76 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active

immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory

syncytial virus (RSV) in individuals 60 years of age and older." Exhibit 20 at 2. Moderna denies

the remaining allegations in Paragraph 76.

77.    The FDA-approved use for the Accused Product is a "method of eliciting an immune response in a vertebrate, the method comprising administering to the vertebrate an effective amount to elicit the immune response" of the Accused Product. *See* paragraphs 46–56, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2 ("Administer MRESVIA intramuscularly."), 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use. Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation. A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults …."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 6 ("One mRNA-1345 injection of 50 … µg increased RSV-A and RSV-B neutralizing antibody titers (Figure 3, Supplementary Table 4) as well as preF and postF binding antibody concentrations (Figure 4, Supplementary Table 5)."), 8 ("This phase 1 trial showed that mRNA-1345 is well tolerated and immunogenic in younger adults."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 6–7 (E.g., "A single mRNA-1345 injection elicited nAb responses against RSV-A and RSV-B subtypes at all dose levels evaluated."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**:  Insofar as Paragraph 77 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active

immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory

syncytial virus (RSV) in individuals 60 years of age and older." Exhibit 20 at 2. Moderna denies

the remaining allegations in Paragraph 77.

78.    The Accused Product satisfies each and every element of exemplary claim 6 of the '770 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 78.

79.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product satisfies each and every element of exemplary claim 6 of the '770 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 79.

80.     On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce third-party manufacturers to directly infringe at least claim 6 of the '770 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '770 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 80.

81.     On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the mRNA and lipid particles in the Accused Product constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than in, the Accused Product and its process of manufacture, and therefore to infringe at least claim 6 of the '770 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 81.

82.     Administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 6 and 24 of the '770 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 82.

83.     On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 6 and 24 of the '770 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 83.

84.     On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce healthcare practitioners to directly infringe at least claims 6 and 24 of the '770 patent by administering the Accused Product within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '770 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 84.

85.     On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product constitutes a material part of, is especially made and especially adapted for, and is not a staple article or commodity of commerce suitable for substantial use in the United States other than in, its FDA-approved use, and therefore to infringe at least claim 24 of the '770 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 85.

86.    For the foregoing reasons, Moderna directly infringes at least claim 6 of the '770 patent under 35 U.S.C. § 271(a), by making, offering to sell, or selling within the United States, or importing into the United States, the Accused Product, without authority or license to do so, during the term of the '770 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 86.

87.    In addition or in the alternative, Moderna infringes at least claim 6 of the '770 patent under 35 U.S.C. § 271(b) by actively inducing third-party manufacturers to directly infringe at least claim 6 of the '770 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '770 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 87.

88.    In addition or in the alternative, Moderna infringes at least claims 6 and 24 of the '770 patent under 35 U.S.C. § 271(b) by actively inducing healthcare practitioners to directly infringe at least claims 6 and 24 of the '770 patent by administering the Accused Product to patients within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '770 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 88.

89.    In addition or in the alternative, Moderna contributorily infringes at least claim 24 of the '770 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the Accused Product without authority or license to do so, during the term of the '770 patent, knowing that it constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 24 of the '770 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**: Moderna denies the allegations in Paragraph 89.

90.    In addition or in the alternative, Moderna contributorily infringes at least claim 6 of the '770 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the mRNA and/or lipid particles to be used in the Accused Product, without authority or license to do so, during the term of the '770 patent, knowing that each constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 6 of the '770 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**: Moderna denies the allegations in Paragraph 90.

91.    GSK is suffering damages from Moderna's infringement of the '770 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 91.

92.     GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '770 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 92.

93.     Moderna's infringement of the '770 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 93.

94.     Moderna's conduct with respect to the '770 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues those actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 94.

## COUNT II

### (Infringement of the '861 Patent)

95.     GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs 1-94 of the Complaint.

96.     GSK Biologicals is the lawful owner by assignment of the '861 patent, which is entitled "Delivery of RNA to Trigger Multiple Immune Pathways" and was duly and legally issued by the U.S. Patent and Trademark Office on July 4, 2023.  A true and correct copy of the '861 patent is attached as Exhibit 2.

**ANSWER**:  Insofar as Paragraph 96 contains legal conclusions, no response is required. To the extent an answer is required, Moderna admits that, according to the face of the patent, the '861 patent is titled "Delivery of RNA to Trigger Multiple Immune Pathways," and issued on July 4, 2023.  Further answering, Moderna states that what purports to be a copy of the '861 patent is attached to the Complaint as Exhibit 2.  Moderna denies any remaining allegations contained in this Paragraph, including that the '861 patent was duly and legally issued and/or made a valid claim of priority, as well as any suggestion or implication that the patent's claims are valid or enforceable or that Moderna infringes any claims of the '861 patent.

97.     Each claim of the '861 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 97.

98.     Moderna infringes, under 35 U.S.C. § 271(a), (b), and/or (c), one or more claims of the '861 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 98.

99.     Moderna has had knowledge of the '861 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 99 contains legal conclusions, no response is required.

To the extent a response is required, and the allegations of Paragraph 99 purport to rely on Exhibit

56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024,

the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 99.

100.    For purposes of illustration and example, claims 1 and 14 of the '861 patent recite:

**1.**     A composition comprising lipid particles and messenger ribonucleic acid (mRNA) molecules; the mRNA molecules comprising: (i) a 5' cap nucleoside, (ii) a first 5' ribonucleoside, (iii) a triphosphate bridge, and (iv) a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen; the first 5' ribonucleotide comprising a 2'-methylated ribose; the 5' cap nucleoside linked 5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge; the lipid particles comprising: (a) a polyethylene glycol-ylated lipid, (b) cholesterol, (c) an anionic phospholipid or a zwitterionic phospholipid, and (d) a cationic lipid comprising a tertiary amine; and the lipid particles encapsulating at least half of the mRNA molecules.

**14.**    A method of eliciting in a human an immune response comprising an antibody response against the RSV F-protein immunogen or a cell-mediated immune response against the RSV-F protein immunogen, the method comprising administering to the human an effective amount of the composition of claim **1** to elicit the immune response.

**ANSWER**:  Insofar as Paragraph 100 contains legal conclusions, no response is required.

To the extent a response is required, Moderna admits that claims 1 and 14 of the '861 patent recite the above claim language.  Moderna otherwise denies the remaining allegations in Paragraph 100.

101.    The Accused Product is a "composition comprising lipid particles and messenger ribonucleic acid (mRNA) molecules."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use. Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection.."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs).  The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs.  The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar).

**ANSWER**:  Insofar as Paragraph 101 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 101.

102.    The mRNA molecules of the Accused Product comprise "a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3;

Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

    **ANSWER**:  Insofar as Paragraph 102 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 102.

    103.    The mRNA molecules of the Accused Product comprise "(i) a 5' cap nucleoside, (ii) a first 5' ribonucleoside, (iii) a triphosphate bridge, … the first 5' ribonucleotide comprising a 2'-methylated ribose; the 5' cap nucleoside linked 5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 28 (Moderna WO336 Publication) at 73–79 ("Example I – Phase I Study" using mRNA-1345), 80–81 (Table I. Vaccine Sequences, Prefusion RSV F Protein dCT Variant) (providing the structure of the "Cap" ("7mG(5')ppp(5')N1mpNp"), the sequence of the "5' UTR" (SEQ ID NO: 33), the sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34), the sequence of the "3' UTR" (SEQ ID NO: 35), and the length of the "PolyA tail" ("100 nt")); *see also* Exhibit 29 (Chaudhary (2021)) at 818 ("mRNA vaccines comprise synthetic mRNA molecules that direct the production of the antigen that will generate an immune response.  In vitro-transcribed (IVT) mRNA mimics the structure of endogeneous mRNA, with five sections, from 5' to 3': 5' cap, 5' untranslated region (UTR), an open reading frame that encodes the antigen, 3' UTR and a poly(A) tail (Fig. 1)."), 819 (Fig. 1a); 2023 CNBC Interview at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 30 ('789 PTE) at 1–3 (providing the specific structure of the "Cap" ("m7G-5'-ppp-5'-Gm") used in Moderna's COVID-19 mRNA vaccine products).

    **ANSWER**:  Insofar as Paragraph 103 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 103.

    104.    The lipid particles of the Accused Product comprise "(a) a polyethylene glycolylated lipid, (b) cholesterol, (c) an anionic phospholipid or a zwitterionic phospholipid, and (d) a cationic lipid comprising a tertiary amine."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]) ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs).  The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 (similar); *see also* paragraphs 105–107, *infra*.

**ANSWER**:  Insofar as Paragraph 104 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 104.

105.    SM-102 (in chemical nomenclature, heptadecan-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "cationic lipid comprising a tertiary amine."  *See*, *e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov (2021)) at 16989, 16993; Exhibit 50 (Schoenmaker (2021)) at 4, 8.

**ANSWER**:  Insofar as Paragraph 105 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 105.

106.    Polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], also referred to as PEG2000-DMG (in chemical nomenclature, 1,2-dimyristoyl-rac-glyxero-3-methylpolyoxyethylene), is a "polyethylene glycol-ylated lipid."  *See*, *e.g.*, Exhibit 30 ('789 PTE) at 5, 10–11, Exhibit 3 thereto (Tenchov (2021)) at 16989; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 106 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 106.

107.    DSPC (in chemical nomenclature, 1,2-distearoyl-sn-glycero-3-phosphocholine) is a "phospholipid comprising … a zwitterionic phospholipid."  *See*, *e.g.*, Exhibit 30 ('789 PTE) at 4, 6, 10, Exhibit 3 thereto (Tenchov (2021)) at 16989, and Exhibit 9 thereto (Kaur (2011)) at 2728 ("the zwitterionic lipid DSPC"); Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 107 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 107.

108.    On information and belief, the lipid particles of the Accused Product "encapsulat[e] at least half of the mRNA molecules."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 30 (FDA CMC Review Memo) at 1 ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticleencapsulated mRNA-based vaccine …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 53 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70 C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%"); Exhibit 50 (Schoenmaker (2021)) at 4 ("In

mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%.").

**ANSWER**:  Insofar as Paragraph 108 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 108.

109.    The FDA-approved use for the Accused Product is a "method of eliciting in a human an immune response comprising an antibody response against the RSV F-protein immunogen or a cell-mediated immune response against the RSV-F protein immunogen, the method comprising administering to the human an effective amount … to elicit the immune response" of the Accused Product.  *See* paragraphs 46–56, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2 ("Administer MRESVIA intramuscularly."), 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use.  Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation.  A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults ….."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 6 ("One mRNA-1345 injection of 50 … µg increased RSV-A and RSV-B neutralizing antibody titers (Figure 3, Supplementary Table 4) as well as preF and postF binding antibody concentrations (Figure 4, Supplementary Table 5)."), 8 ("This phase 1 trial showed that mRNA-1345 is well tolerated and immunogenic in younger adults."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 6–7 (E.g., "A single mRNA-1345 injection elicited nAb responses against RSVA and RSV-B subtypes at all dose levels evaluated."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**:  Insofar as Paragraph 109 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older."  Exhibit 20 at 2.  Moderna denies the remaining allegations in Paragraph 109.

110.    The Accused Product satisfies each and every element of exemplary claim 1 of the '861 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 110.

111.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product satisfies

each and every element of exemplary claim 1 of the '861 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 111.

112.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce third-party manufacturers to directly infringe at least claim 1 of the '861 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 112.

113.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the mRNA and lipid particles in the Accused Product constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than in, the Accused Product and its process of manufacture, and therefore to infringe at least claim 1 of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 113.

114.    Administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 1 and 14 of the '861 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 114.

115.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 1 and 14 of the '861 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 115.

116.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce healthcare practitioners to directly infringe at least claims 1 and 14 of the '861 patent by administering the Accused Product within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 116.

117.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product constitutes a material part of, is especially made and especially adapted for, and is not a staple article or commodity of commerce suitable for substantial use in the United States other than, its FDA-approved use, and therefore to infringe at least claim 14 of the '861 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 117.

118.    For the foregoing reasons, Moderna directly infringes at least claim 1 of the '861 patent under 35 U.S.C. § 271(a), by making, offering to sell, or selling within the United States, or importing into the United States, the Accused Product, without authority or license to do so, during the term of the '861 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 118.

119.    In addition or in the alternative, Moderna infringes at least claim 1 of the '861 patent under 35 U.S.C. § 271(b) by actively inducing third-party manufacturers to directly infringe at least claim 1 of the '861 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 119.

120.    In addition or in the alternative, Moderna infringes at least claims 1 and 14 of the '861 patent under 35 U.S.C. § 271(b) by actively inducing healthcare practitioners to directly infringe at least claims 1 and 14 of the '861 patent by administering the Accused Product to patients within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 120.

121.    In addition or in the alternative, Moderna contributorily infringes at least claim 14 of the '861 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the Accused Product without authority or license to do so, during the term of the '861 patent, knowing that it constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 14 of the '861 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 121.

122.    In addition or in the alternative, Moderna contributorily infringes at least claim 1 of the '861 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the mRNA and/or lipid particles to be used in the Accused Product, without authority or license to do so, during the term of the '861 patent, knowing that each constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 1 of the '861 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 122.

123.    GSK is suffering damages from Moderna's infringement of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 123.

124.    GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '861 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 124.

125.    Moderna's infringement of the '861 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 125.

126.    Moderna's conduct with respect to the '861 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues those actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 126.

## <u>COUNT III</u>

### (Infringement of the '864 Patent)

127.    GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs

1-126 of the Complaint.

128.    GSK Biologicals is the lawful owner by assignment of the '864 patent, which is entitled "Delivery of RNA to Trigger Multiple Immune Pathways" and was duly and legally issued by the U.S. Patent and Trademark Office on July 4, 2023.  A true and correct copy of the '864 patent is attached as Exhibit 3.

**ANSWER**:  Insofar as Paragraph 128 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that, according to the face of the patent, the

'864 patent is titled "Delivery of RNA to Trigger Multiple Immune Pathways," and issued on July

4, 2023.  Further answering, Moderna states that what purports to be a copy of the '864 patent is

attached to the Complaint as Exhibit 3.  Moderna denies any remaining allegations contained in

this Paragraph, including that the '864 patent was duly and legally issued and/or made a valid

claim of priority, as well as any suggestion or implication that the patent's claims are valid or

enforceable or that Moderna infringes any claims of the '864 patent.

129.    Each claim of the '864 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 129.

130.    Moderna infringes, under 35 U.S.C. § 271(a), (b), and/or (c), one or more claims of the '864 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 130.

131.    Moderna has had knowledge of the '864 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 131 contains legal conclusions, no response is required.

To the extent a response is required, and the allegations of Paragraph 131 purport to rely on Exhibit

56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024,

the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 131.

132.    For purposes of illustration and example, claims 1 and 14 of the '864 patent recite:

**1.** A composition comprising liposomes and messenger ribonucleic acid (mRNA) molecules; the mRNA molecules comprising: (i) a 5' cap nucleoside, (ii) a first 5'ribonucleoside, (iii) a triphosphate bridge, (iv) a 3' polyadenosine monophosphate tail, and (v) a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen; the first 5' ribonucleoside comprising a 2'-methylated ribose; the 5' cap nucleoside being linked 5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge; the liposomes comprising cholesterol and a cationic lipid comprising a tertiary amine; and the liposomes encapsulating at least half of the mRNA molecules.

**14.** A method of eliciting in a human an immune response comprising an antibody response against the RSV F-protein immunogen or a cell-mediated immune response against the RSV F-protein immunogen, the method comprising administering to the

84

human an effective amount of the composition of claim **1** to elicit the immune response.

**ANSWER**: Insofar as Paragraph 132 contains legal conclusions, no response is required.

To the extent a response is required, Moderna admits that claims 1 and 14 of the '864 patent recite the above claim language. Moderna otherwise denies the remaining allegations in Paragraph 132.

133. The Accused Products is a "composition comprising liposomes and messenger ribonucleic acid (mRNA) molecules." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use. Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs. The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 30 ('789 PTE) at Exhibit 3 thereto (Tenchov 2021) at 16982–83 (E.g., "Since liposomes are made of lipids and in most cases are nanosized, they are rightfully considered as the earliest generation of lipid nanoparticles.").

**ANSWER**: Insofar as Paragraph 133 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 133.

134. The mRNA molecules of the Accused Product comprise "(i) a 5' cap nucleoside, (ii) a first 5' ribonucleoside, (iii) a triphosphate bridge, (iv) a 3' polyadenosine monophosphate tail, … the first 5' ribonucleoside comprising a 2'-methylated ribose; the 5' cap nucleoside being linked 5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge." *See* paragraphs 36–44,

*supra*; *e.g.,* Exhibit 28 (Moderna WO336 Publication) at 73–79 ("Example I – Phase I Study" using mRNA-1345), 80–81 (Table I. Vaccine Sequences, Prefusion RSV F Protein dCT Variant) (providing the structure of the "Cap" ("7mG(5')ppp(5')N1mpNp"), the sequence of the "5' UTR" (SEQ ID NO: 33), the sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34), the sequence of the "3' UTR" (SEQ ID NO: 35), and the length of the "PolyA tail" ("100 nt")); *see also* Exhibit 29 (Chaudhary (2021)) 817–818 ("mRNA vaccines comprise synthetic mRNA molecules that direct the production of the antigen that will generate an immune response. In vitro-transcribed (IVT) mRNA mimics the structure of endogenous mRNA, with five sections, from 5' to 3': 5' cap, 5' untranslated region (UTR), an open reading frame that encodes the antigen, 3' UTR and a poly(A) tail (Fig. 1)."), 819 (Fig. 1a); 2023 CNBC Interview at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw aterials, as for the COVID shot."); Exhibit 30 ('789 PTE) at 1–3 (providing the specific structure of the "Cap" ("m7G-5'-ppp-5'-Gm") used in Moderna's COVID-19 mRNA vaccine products).

**ANSWER**: Insofar as Paragraph 134 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 134.

135.    The mRNA molecules the Accused Products comprise "a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen." *See* paragraphs 36–44, *supra; e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

**ANSWER**: Insofar as Paragraph 135 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 135.

136.    The liposomes of the Accused Product comprise "cholesterol and a cationic lipid comprising a tertiary amine." *See* paragraphs 36–44, *supra; e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]) ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation

consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 (similar); *see also* paragraph 137, *infra*.

     **ANSWER**: Insofar as Paragraph 136 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 136.

     137.    SM-102 (in chemical nomenclature, heptadecane-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "cationic lipid comprising a tertiary amine." *See, e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov (2021)) at 16989, 16993; Exhibit 50 (Schoenmaker (2021)) at 4, 8.

     **ANSWER**: Insofar as Paragraph 137 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 137.

     138.    On information and belief, the liposomes of each of the Accused Products "encapsulat[e] at least half of the mRNA molecules." *See* paragraphs 36–44, *supra; e.g.*, Exhibit 19 (FDA CMC Review Memo) at i ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 53 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70 C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%"); Exhibit 50 (Schoenmaker (2021)) at 4 ("In mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%.").

     **ANSWER**: Insofar as Paragraph 138 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older." Exhibit 20 at 2. Moderna denies the remaining allegations in Paragraph 138.

139.    The FDA-approved use for the Accused Product is a "method of eliciting in a human an immune response comprising an antibody response against the RSV F-protein immunogen or a cell-mediated immune response against the RSV F-protein immunogen, the method comprising administering to the human an effective amount … to elicit the immune response" of the Accused Product.  *See* paragraphs 46–56, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2 ("Administer MRESVIA intramuscularly."), 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use.  Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNAbased vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation.  A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults …."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 6 ("One mRNA-1345 injection of 50 … μg increased RSV-A and RSV-B neutralizing antibody titers (Figure 3, Supplementary Table 4) as well as preF and postF binding antibody concentrations (Figure 4, Supplementary Table 5)."), 8 ("This phase 1 trial showed that mRNA-1345 is well tolerated and immunogenic in younger adults."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 6–7 (E.g., "A single mRNA-1345 injection elicited nAb responses against RSV-A and RSV-B subtypes at all dose levels evaluated."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**:  Insofar as Paragraph 139 contains legal conclusions, no response is required. To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older."  Exhibit 20 at 2.  Moderna denies the remaining allegations in Paragraph 139.

140.    The Accused Product satisfies each and every element of exemplary claim 1 of the '864 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 140.

141.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product satisfies each and every element of exemplary claim 1 of the '864 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 141.

142.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to

induce third-party manufacturers to directly infringe at least claim 1 of the '864 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 142.

143.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the mRNA and lipid particles in the Accused Product constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than in, the Accused Product and its process of manufacture, and therefore to infringe at least claim 1 of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 143.

144.    Administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 1 and 14 of the '864 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 144.

145.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claims 1 and 14 of the '864 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 145.

146.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce healthcare practitioners to directly infringe at least claims 1 and 14 of the '864 patent by administering the Accused Product within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 146.

147.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product constitutes a material part of, is especially made and especially adapted for, and is not a staple article or commodity of commerce suitable for substantial use in the United States other than in, its FDA-approved use, and therefore to infringe at least claim 14 of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 147.

148.    For the foregoing reasons, Moderna directly infringes at least claim 1 of the '864 patent under 35 U.S.C. § 271(a), by making, offering to sell, or selling within the United States, or importing into the United States, the Accused Product, without authority or license to do so, during the term of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 148.

149.    In addition or in the alternative, Moderna infringes at least claim 1 of the '864 patent under 35 U.S.C. § 271(b) by actively inducing third-party manufacturers to directly infringe at least claim 4 of the '861 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 149.

150.    In addition or in the alternative, Moderna infringes at least claims 1 and 14 of the '864 patent under 35 U.S.C. § 271(b) by actively inducing healthcare practitioners to directly infringe at least claims 1 and 14 of the '864 patent by administering the Accused Product to patients within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 150.

151.    In addition or in the alternative, Moderna contributorily infringes at least claim 14 of the '864 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the Accused Product without authority or license to do so, during the term of the '864 patent, knowing that it constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 14 of the '864 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 151.

152.    In addition or in the alternative, Moderna contributorily infringes at least claim 1 of the '864 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the mRNA and/or lipid particles to be used in the Accused Product, without authority or license to do so, during the term of the '864 patent, knowing that each constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 1 of the '864 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 152.

153.    GSK is suffering damages from Moderna's infringement of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 153.

154.    GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '864 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph154.

155.    Moderna's infringement of the '864 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 155.

156.    Moderna's conduct with respect to the '864 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues those actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 156.

## <u>COUNT IV</u>

### (Infringement of the '529 Patent)

157.    GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs 1-156 of the Complaint.

158.    GSK Biologicals is the lawful owner by assignment of the '529 patent, which is entitled "Delivery of RNA to Trigger Multiple Immune Pathways" and was duly and legally issued by the U.S. Patent and Trademark Office on August 8, 2023.  A true and correct copy of the '529 patent is attached as Exhibit 4.

**ANSWER**:  Insofar as Paragraph 158 contains legal conclusions, no response is required. To the extent a response is required, Moderna admits that, according to the face of the patent, the '529 patent is titled "Delivery of RNA to Trigger Multiple Immune Pathways," and issued on August 8, 2023.  Further answering, Moderna states that what purports to be a copy of the '529 patent is attached to the Complaint as Exhibit 4.  Moderna denies any remaining allegations contained in this paragraph, including that the '529 patent was duly and legally issued and/or made a valid claim of priority, as well as any suggestion or implication that the patent's claims are valid or enforceable or that Moderna infringes any claims of the '529 patent.

159.    Each claim of the '529 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 159.

160.    Moderna has infringed and continues to infringe under 35 U.S.C. § 271(a), (b), (c), and/or (g), one or more claims of the '529 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 160.

161.    Moderna has had knowledge of the '529 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 161 contains legal conclusions, no response is required.

To the extent a response is required, and the allegations of Paragraph 161 purport to rely on Exhibit

56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024,

the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 161.

162.    For purposes of illustration and example, claim 1 of the '529 patent recites:

> **1.**    A method of obtaining a composition, the composition comprising liposomes and messenger ribonucleic acid (mRNA) molecules; the mRNA molecules comprising: (a) a 5' cap nucleoside, (b) a first 5'ribonucleoside, (c) a triphosphate bridge, (d) a 3' polyadenosine monophosphate tail, and (e) a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen; the first 5' ribonucleoside comprising a 2'-methylated ribose; the 5' cap nucleoside being linked 5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge; the liposomes comprising lipids comprising cholesterol and a cationic lipid comprising a tertiary amine; and the liposomes encapsulating at least half of the mRNA molecules; the method comprising the steps of:
>
> (i) mixing the lipids and ethanol, thereby obtaining an ethanolic lipid mixture;
>
> (ii) mixing the mRNA molecules and an aqueous buffer, thereby obtaining an aqueous RNA mixture;
>
> (iii) mixing the ethanolic lipid mixture and the aqueous RNA mixture, thereby obtaining an intermediate mixture; and

(iv) purifying the intermediate mixture, thereby obtaining the composition.

**ANSWER**: Insofar as Paragraph 162 contains legal conclusions, no response is required.

To the extent a response is required, Moderna admits that claim 1 of the '529 patent recites the above claim language. Moderna otherwise denies the remaining allegations in Paragraph 162.

163. The Accused Product comprises "a composition, the composition comprising liposomes and messenger ribonucleic acid (mRNA) molecules." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use. Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs. The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 30 ('789 PTE) at Exhibit 3 thereto (Tenchov 2021) at 16982–83 (E.g., "Since liposomes are made of lipids and in most cases are nanosized, they are rightfully considered as the earliest generation of lipid nanoparticles.").

**ANSWER**: Insofar as Paragraph 163 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 163.

164. The mRNA molecules of the Accused Product comprise "(a) a 5' cap nucleoside, (b) a first 5'ribonucleoside, (c) a triphosphate bridge, (d) a 3' polyadenosine monophosphate tail, … the first 5' ribonucleoside comprising a 2'-methylated ribose; the 5' cap nucleoside being linked

5'-to-5' to the first 5' ribonucleoside by the triphosphate bridge." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 28 (Moderna WO336 Publication) at 73–79 ("Example I – Phase I Study" using mRNA-1345), 80–81 (Table I. Vaccine Sequences, Prefusion RSV F Protein dCT Variant) (providing the structure of the "Cap" ("7mG(5')ppp(5')N1mpNp"), the sequence of the "5' UTR" (SEQ ID NO: 33), the sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34), the sequence of the "3' UTR" (SEQ ID NO: 35), and the length of the "PolyA tail" ("100 nt")); *see also* Exhibit 29 (Chaudhary (2021)) 818–819 ("mRNA vaccines comprise synthetic mRNA molecules that direct the production of the antigen that will generate an immune response. In vitro-transcribed (IVT) mRNA mimics the structure of endogenous mRNA, with five sections, from 5' to 3': 5' cap, 5' untranslated region (UTR), an open reading frame that encodes the antigen, 3' UTR and a poly(A) tail (Fig. 1).")., 819 (Fig. 1a); 2023 CNBC Interview at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 30 ('789 PTE) at 1–3 (providing the specific structure of the "Cap" ("m7G-5'-ppp-5'-Gm") used in Moderna's COVID-19 mRNA vaccine products).

**ANSWER**:  Insofar as Paragraph 164 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 164.

165.    The mRNA molecules of the Accused Product comprise "a sequence that encodes a respiratory syncytial virus (RSV) surface fusion glycoprotein (F-protein) immunogen." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

**ANSWER**:  Insofar as Paragraph 165 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 165.

166.    The liposomes of the Accused Product comprise "lipids comprising cholesterol and a cationic lipid comprising a tertiary amine." *See* paragraphs 36–44, supra; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]) ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF

conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 (similar); *see also* paragraph 167, *infra*.

> **ANSWER**: Insofar as Paragraph 166 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 166.

167.    SM-102 (in chemical nomenclature, heptadecane-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "cationic lipid comprising a tertiary amine." *See*, *e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov (2021)) at 16989, 16993; Exhibit 50 (Schoenmaker (2021)) at 4, 8.

> **ANSWER**: Insofar as Paragraph 167 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 167.

168.    On information and belief, the liposomes of the Accused Product "encapsulat[e] at least half of the mRNA molecules." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 19 (FDA CMC Review Memo) at i ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 52 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70 C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%"); Exhibit 50 (Schoenmaker (2021)) at 4 ("In mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%.").

> **ANSWER**: Insofar as Paragraph 168 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 168.

169.    On information and belief, the method by which Moderna manufactures the Accused Product comprises the steps of "(i) mixing the lipids and ethanol, thereby obtaining an ethanolic lipid mixture; (ii) mixing the mRNA molecules and an aqueous buffer, thereby obtaining an aqueous RNA mixture; (iii) mixing the ethanolic lipid mixture and the aqueous RNA mixture, thereby obtaining an intermediate mixture; and (iv) purifying the intermediate mixture, thereby obtaining the composition." *See* paragraph 44, *supra*; *e.g.*, Exhibit 33 (FDA CMC Statistical

Review Memo) at, *e.g.*, 5 ("Moderna's RNA manufacturing process and process control strategy for vaccines, termed RNA-100, was originally developed for Moderna's vaccine Spikevax."); Exhibit 19 (FDA CMC Review Memo) at, *e.g.*, 12 ("ModernaTX manufactures all mRNA vaccines according to the 100 process, using similar process steps, equipment, materials, with similar or identical in-process parameters …."); 2023 CNBC Interview at 2:21 ("And the other great news about mRNA is: because all the products use the same manufacturing process, we don't have capacity constraint because we can use exactly the same equipment, people, and raw materials, as for the COVID shot."); Exhibit 54 (May 17, 2021, WHO Emergency Use Listing submitted by Moderna Biotech (Spain)) at 5–6 ("Manufacture of COVID-19 mRNA vaccine drug substance is divided into 2 sequential steps: *in vitro* synthesis of the active substance and its inclusion in the mRNA-1273 lipid nano particle envelope. … The manufacturing process of mRNA-1273 lipid nanoparticle (mRNA-1273 LNP) consists in different steps as follows: 1. Mixing of CX-024414 mRNA with lipid stock solution containing novel excipient SM-102, cholesterol … 3. Clarification by 0.8 and 0.2 μm dual-layer polyethersulfone (PES) filter; 4. Dispensing in sterile, single-use bags …."); Exhibit 55 (March 11, 2021, EMA Spikevax® (original monovalent) Assessment Report) at 29, 43 ("The LNP manufacturing process comprises lipid stock solution (LSS) preparation, nanoprecipitation mixing, tangential flow filtration (TFF), dilution and cryoprotectant addition, clarification, fill, and freezing and storage. … The mRNA is encapsulated in LNPs through a modified ethanol-drop nanoprecipitation process.").

**ANSWER**:  Insofar as Paragraph 169 contains legal conclusions, no response is required. To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older."  Exhibit 20 at 2.  Moderna denies the remaining allegations in Paragraph 169.

170.    The process by which the Accused Product is manufactured satisfies each and every element of exemplary claim 1 of the '529 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 170.

171.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the process by which the Accused Product is manufactured satisfies each and every element of exemplary claim 1 of the '529 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 171.

172.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce third-party manufacturers to directly infringe at least claim 1 of the '529 patent by making

the Accused Product using the process of claim 1 of the '529 patent within the United States without authority or license to do so, during the term of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 172.

173.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the mRNA and liposomes used in manufacture of the Accused Product constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than as materials for use in, the manufacture of the Accused Product, and therefore to infringe at least claim 1 of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 173.

174.    For the foregoing reasons, Moderna directly infringes at least claim 1 of the '529 patent under 35 U.S.C. § 271(a), by making within the United States, the Accused Product using the process of claim 1 of the '529 patent, without authority or license to do so, during the term of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 174.

175.    In addition or in the alternative, Moderna infringes at least claim 1 of the '529 patent under 35 U.S.C. § 271(b) by actively inducing third-party manufacturers to directly infringe at least claim 1 of the '529 patent by making the Accused Product using the process of claim 1 of the '529 patent within the United States without authority or license to do so, during the term of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 175.

176.    In addition or in the alternative, Moderna contributorily infringes at least claim 1 of the '529 patent under 35 U.S.C. § 271(c) by importing into the United States, the mRNA and/or liposomes to be used in the Accused Product, without authority or license to do so, during the term of the '529 patent, knowing that each constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 1 of the '529 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 176.

177.    In addition or in the alternative, Moderna infringes at least claim 1 of the '529 patent under 35 U.S.C. § 271(g) by importing into the United States, or offering to sell, or selling within the United States the Accused Product made by the process of claim 1 of the '529 patent, without authority or license to do so, during the term of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 177.

178.    GSK is suffering damages from Moderna's infringement of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 178.

179.    GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '529 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 179.

180.    Moderna's infringement of the '529 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 180.

181.    Moderna's conduct with respect to the '529 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues those actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 181.

## COUNT V

### (Infringement of the '467 Patent)

182.    GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs 1-181 of the Complaint.

183.    GSK Biologicals is the lawful owner by assignment of the '467 patent, which is entitled "Lipid Formulations With Immunogens" and was duly and legally issued by the U.S. Patent and Trademark Office on October 17, 2023.  A true and correct copy of the '467 patent is attached as Exhibit 5.

**ANSWER**:  Insofar as Paragraph 183 contains legal conclusions, no response is required. To the extent an answer is required, Moderna admits that, according to the face of the patent, the '467 patent is titled "Lipid Formulations with Immunogens," and issued on October 17, 2023. Further answering, Moderna states that what purports to be a copy of the '467 patent is attached to the Complaint as Exhibit 5.  Moderna denies any remaining allegations contained in this Paragraph, including that the '467 patent was duly and legally issued and/or made a valid claim of

priority, as well as any suggestion or implication that the patent's claims are valid or enforceable or that Moderna infringes any claims of the '467 patent.

184.    Each claim of the '467 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 184.

185.    Moderna infringes, under 35 U.S.C. § 271(a), (b), and/or (c), one or more claims of the '467 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 185.

186.    Moderna has had knowledge of the '467 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 186 contains legal conclusions, no response is required. To the extent a response is required, and the allegations of Paragraph 186 purport to rely on Exhibit 56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024, the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 186.

187.    For purposes of illustration and example, claim 1 of the '467 patent recites:

**1.** A formulation comprising:

ribonucleic acid (RNA) molecules comprising a sequence that encodes an immunogen; and

lipids comprising a tertiary amine cationic lipid, a polyethylene glycol-conjugated (PEG-conjugated) lipid, and cholesterol;

wherein the formulation is immunogenic in vivo by eliciting an antibody response against the immunogen in vivo;

wherein the lipids encapsulate at least half of the RNA molecules.

**ANSWER**:  Insofar as Paragraph 187 contains legal conclusions, no response is required. To the extent a response is required, Moderna admits that claim 1 of the '467 patent recites the above claim language.  Moderna otherwise denies the remaining allegations in Paragraph 187.

188.   The Accused Product is a "formulation comprising: ribonucleic acid (RNA) molecules … and lipids." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use.  Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection."); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs).  The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs.  The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar).

   **ANSWER**:  Insofar as Paragraph 188 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 188.

189.   The RNA molecules of the Accused Product comprise "a sequence that encodes an immunogen." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

**ANSWER**:  Insofar as Paragraph 189 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 189.

190.    The lipids of the Accused Product comprise "a tertiary amine cationic lipid, a polyethylene glycol-conjugated (PEG-conjugated) lipid, and cholesterol."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients:  a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]) ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs).  The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 (similar); *see also* paragraphs 191–192, *infra*.

**ANSWER**:  Insofar as Paragraph 190 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 190.

191.    SM-102 (in chemical nomenclature, heptadecane-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "tertiary amine cationic lipid."  *See*, *e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov (2021)) at 16989, 16993; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 191 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 191.

192.    Polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], also referred to as PEG2000-DMG    (in    chemical    nomenclature,    1,2-dimyristoyl-rac-glyxero-3-methylpolyoxyethylene), is a "polyethylene glycol-conjugated (PEG-conjugated) lipid."  *See*, *e.g.*, Exhibit 30 ('789 PTE) at 5, 10–11, Exhibit 3 thereto (Tenchov (2021)) at 16989; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 192 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 192.

193.    On information and belief, the lipids of the Accused Product "encapsulate at least half of the RNA molecules."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 19 (FDA CMC Review Memo) at i ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson

(2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNAbased vaccine …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 53 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70 C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%"); Exhibit 50 (Schoenmaker (2021)) at 4 ("In mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%.").

**ANSWER**: Insofar as Paragraph 193 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 193.

194.    When administered to a patient in accordance with the FDA-approved use, the Accused Products is "immunogenic in vivo by eliciting an antibody response against the immunogen in vivo." *See* paragraph 56, *supra*; *e.g.*, Exhibit 48 (Wilson (2023)) at 2234 ("A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults; the vaccine induced neutralizing antibodies against both the RSV A and B subtypes …."), 2241–2242; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("mRNA-1345 boosted RSV neutralizing antibody titers … and RSV prefusion binding antibody concentrations"), 6–7, Supplementary Information passim; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 1 ("mRNA-1345 injection boosted RSV-A and RSV-B neutralizing antibody titers and prefusion F binding antibody (preF bAb) concentrations"), 8, Supplementary Information *passim*; Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**: Insofar as Paragraph 194 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 194.

195.    The Accused Product satisfies each and every element of exemplary claim 1 of the '467 patent, either literally or under the doctrine of equivalents.

**ANSWER**: Moderna denies the allegations in Paragraph 195.

196.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product satisfies each and every element of exemplary claim 1 of the '467 patent, either literally or under the doctrine of equivalents.

**ANSWER**: Moderna denies the allegations in Paragraph 196.

197.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to

induce third-party manufacturers to directly infringe at least exemplary claim 1 of the '467 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 197.

198.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the mRNA and lipid particles in the Accused Product constitute material parts of, are especially made and especially adapted for use in, and are not staple articles or commodities of commerce suitable for any other substantial use in the United States other than in, the Accused Product and its process of manufacture, and therefore to infringe at least claim 1 of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 198.

199.    Administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claim 1 of the '467 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 199.

200.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claim 1 of the '467 patent, either literally or under the doctrine of equivalents.

**ANSWER**:  Moderna denies the allegations in Paragraph 200.

201.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce healthcare practitioners to directly infringe at least exemplary claim 1 of the '467 patent by administering the Accused Product within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 201.

202.    For the foregoing reasons, Moderna directly infringes at least claim 1 of the '467 patent under 35 U.S.C. § 271(a), by making, offering to sell, or selling within the United States, or importing into the United States, the Accused Product, without authority or license to do so, during the term of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 202.

203.    In addition or in the alternative, Moderna infringes at least claim 1 of the '467 patent under 35 U.S.C. § 271(b) by actively inducing third-party manufacturers to directly infringe at least claim 1 of the '467 patent by making the Accused Product within the United States without authority or license to do so, during the term of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 203.

204.    In addition or in the alternative, Moderna infringes at least claim 1 of the '467 patent under 35 U.S.C. § 271(b) by actively inducing healthcare practitioners to directly infringe at least claim 1 of the '467 patent by administering the Accused Product to patients within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 204.

205.    In addition or in the alternative, Moderna contributorily infringes at least claim 1 of the '467 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the mRNA and/or lipid particles to be used in the Accused Product, without authority or license to do so, during the term of the '467 patent, knowing that each constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 1 of the '467 patent, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 205.

206.    GSK is suffering damages from Moderna's infringement of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 206.

207.    GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '467 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 207.

208.    Moderna's infringement of the '467 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 208.

209.    Moderna's conduct with respect to the '467 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues those actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 209.

## COUNT VI

### (Infringement of the '534 Patent)

210.     GSK incorporates each of the preceding paragraphs as if fully set forth herein.

**ANSWER**:  Moderna repeats and incorporates by reference its responses to paragraphs 1-209 of the Complaint.

211.     GSK Biologicals is the lawful owner by assignment of the '534 patent, which is entitled "Immunisation with Lipid Formulations with RNA Encoding Immunogens" and was duly and legally issued by the U.S. Patent and Trademark Office on January 30, 2024.  A true and correct copy of the '534 patent is attached as Exhibit 6.

**ANSWER**:  Insofar as Paragraph 211 contains legal conclusions, no response is required. To the extent an answer is required, Moderna admits that, according to the face of the patent, the '534 patent is titled "Immunisation with Lipid Formulations with RNA Encoding Immunogens," and issued on January 30, 2024.  Further answering, Moderna states that what purports to be a copy of the '534 patent is attached to the Complaint as Exhibit 6.  Moderna denies any remaining allegations contained in this Paragraph, including that the '534 patent was duly and legally issued and/or made a valid claim of priority, as well as any suggestion or implication that the patent's claims are valid or enforceable or that Moderna infringes any claims of the '534 patent.

212.     Each claim of the '534 patent is valid and enforceable.

**ANSWER**:  Moderna denies the allegations in Paragraph 212.

213.     Moderna has infringed and continues to infringe, under 35 U.S.C. § 271(b) and/or (c), one or more claims of the '534 patent either literally or under the doctrine of equivalents, through its actions in the United States with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 213.

214.     Moderna has had knowledge of the '534 patent and specific notice of its infringement of that patent at least since October 11, 2024, by communications between GSK and Moderna.  *See* Exhibit 56.

**ANSWER**:  Insofar as Paragraph 214 contains legal conclusions, no response is required. To the extent a response is required, and the allegations of Paragraph 214 purport to rely on Exhibit 56, Moderna admits to receiving the document marked as Exhibit 56 on or about October 11, 2024, the day before suit was filed.  Moderna denies the remaining allegations in Paragraph 214.

215.    For purposes of illustration and example, claim 1 of the '534 patent recites:

> **1.** A method of eliciting an antibody response against an immunogen in a subject, the method comprising administering intramuscularly to the subject an effective amount of a unit dose of a pharmaceutical composition to elicit the antibody response; the pharmaceutical composition comprising ribonucleic acid (RNA) molecules and lipid particles; the RNA molecules comprising a sequence that encodes the immunogen; the immunogen comprising a respiratory syncytial virus surface fusion glycoprotein, an Epstein-Barr virus immunogen, a cytomegalovirus immunogen, a coronavirus spike polypeptide immunogen, an influenza virus A immunogen, a Varicella zoster virus immunogen, or a flavivirus immunogen; the lipid particles comprising: (a) from 40 mole % to 60 mole % cationic lipid comprising a tertiary amine, (b) a polyethylene glycol-conjugated (PEG-conjugated) lipid, and (c) from 35 mole % to 50 mole % cholesterol; at least 80% of the lipid particles having a diameter from 20 nm to 220 nm; the lipid particles encapsulating at least half of the RNA molecules; the administering comprising contacting the pharmaceutical composition with skeletal muscle; and the subject being a human or a cow.

**ANSWER**:  Insofar as Paragraph 215 contains legal conclusions, no response is required. To the extent a response is required, Moderna admits that claim 1 of the '534 patent recites the above claim language.  Moderna otherwise denies the remaining allegations in Paragraph 215.

216.    The Accused Product comprises "a pharmaceutical composition … comprising ribonucleic acid (RNA) molecules and lipid particles."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use.  Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein).  Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]), 0.25 mg tromethamine, 1.2 mg tromethamine hydrochloride, 0.021 mg acetic acid, 0.10 mg sodium acetate trihydrate, 44 mg sucrose, and water for injection..");  Exhibit 48 (Wilson (2023)) at 2234

("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a poly-ethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 2 ("mRNA-1345 contains a nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in LNPs. The LNP formulation consists of an ionizable lipid, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves stability."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar).

**ANSWER**: Insofar as Paragraph 216 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 216.

217.    The mRNA molecules of the Accused Product comprise "a sequence that encodes the immunogen; the immunogen comprising a respiratory syncytial virus surface fusion glycoprotein." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F) protein. … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."); Exhibit 28 (Moderna WO336 Publication) *passim*, *e.g.*, at 80–81 (providing sequence of the "ORF of mRNA (excluding the stop codon)" (SEQ ID NO: 34) and "Corresponding amino acid sequence" (SEQ ID NO: 8)); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3; Exhibit 22 (May 31, 2024, Moderna Press Release) at 2; Exhibit 23 (May 15, 2023, EMA Study Decision) at 1; Exhibit 26 (February 15, 2024 Moderna ReSViNET Presentation) at 5; Exhibit 48 (Wilson (2023)) *passim*; Exhibit 31 (Shaw, *JID*, jiae035 (2024)) *passim*; Exhibit 32 (Shaw, *JID*, jiae081 (2024)) *passim*.

**ANSWER**: Insofar as Paragraph 217 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 217.

218.    On information and belief, the lipid particles of the Accused Product comprise "(a) from 40 mole % to 60 mole % cationic lipid comprising a tertiary amine, (b) a polyethylene glycol-conjugated (PEG-conjugated) lipid, and (c) from 35 mole % to 50 mole % cholesterol." *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 6 ("Each 0.5 mL dose of MRESVIA also contains the following ingredients: a total lipid content of 1.02 mg (SM-102 (heptadecan-9-yl 8-((2-hydroxyethyl) (6-oxo-6-(undecyloxy) hexyl) amino) octanoate), polyethylene glycol 2000 dimyristoyl glycerol [PEG2000-DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3-phosphocholine [DSPC]) ….") (bracketed text in original); Exhibit 31 (Shaw, *JID*,

jiae035 (2024)) at 2 ("mRNA-1345 contains a single nucleoside-modified mRNA sequence encoding the membrane-anchored RSV F glycoprotein (RSV-A2 strain protein sequence) stabilized in the preF conformation through structural engineering and formulated in lipid nanoparticles (LNPs). The LNP formulation consists of an ionizable lipid promoting assembly of LNPs into delivery vehicles, a phospholipid that forms lipid bilayer structures in LNPs, a polyethylene glycol lipid, and a sterol that improves the stability of the formulations."); Exhibit 32 (Shaw, *JID*, jiae081 2024)) at 2 (similar); *see also* Exhibit 50 (Schoenmaker (2021) at 3, Table 1 (reporting the "Molar lipid ratios (%) ionizable cationic lipid : neutral lipid : cholesterol : PEGylated lipid" as "50:10:38.5:1.5"); paragraphs 219–220, *infra*.

**ANSWER**:  Insofar as Paragraph 218 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 218.

219.    SM-102 (in chemical nomenclature, heptadecane-9-yl 8-((2-hydroxyethyl)(6-oxo-6-(undecyloxy)hexyl)amino)octanoate) is a "tertiary amine cationic lipid."  *See, e.g.*, Exhibit 30 ('789 PTE) at 4–5, 10, 12, Exhibit 3 thereto (Tenchov (2021)) at 16989, 16993; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 219 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 219.

220.    Polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], also referred to as PEG2000-DMG (in chemical nomenclature, 1,2-dimyristoyl-rac-glyxero-3-methylpolyoxyethylene), is a "polyethylene glycol-conjugated (PEG-conjugated) lipid."  *See, e.g.*, Exhibit 30 ('789 PTE) at 5, 10–11, Exhibit 3 thereto (Tenchov (2021)) at 16989; Exhibit 50 (Schoenmaker (2021)) at 3, 4, 8.

**ANSWER**:  Insofar as Paragraph 220 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 220.

221.    On information and belief, "at least 80%" of the lipid particles of the Accused Product have "a diameter from 20 nm to 220 nm."  *See, e.g.*, Exhibit 30 ('789 PTE) at 11 (representing that Spikevax® (original monovalent) LNPs have "a particle size of 80-160 nm") citing Exhibit 10 thereto (Spikevax® BLA 125752/0 Section 3.2.S.1.3) at 1; *see also* Exhibit 50 (Schoenmaker et al., "mRNA-lipid nanoparticle COVID-19 vaccines: Structure and Stability," *Intl. J. Pharm.* 601, 120586 (2021) ("Schoenmaker (2021)")) at 4 ("Together with the mRNA, these components form particles of about 60-100 nm in size.").

**ANSWER**:  Insofar as Paragraph 221 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 221.

222.    On information and belief, the lipid particles of the Accused Product "encapsulat[e] at least half of the RNA molecules."  *See* paragraphs 36–44, *supra*; *e.g.*, Exhibit 19 (FDA CMC

Review Memo) at 1 ("MRESVIA is a vaccine that consists of lipid nanoparticles (LNPs) that encapsulate linear mRNA"), 165 ("mRNA-1345 Drug Product (DP) is a white to off-white suspension of nanoparticles composed for four lipids … that protect and deliver mRNA …"); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine …."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5 ("LNP encapsulated mRNA-based vaccine encoding the RSV fusion (F) glycoprotein"); Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3 (similar); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 1 ("A lipid nanoparticle-encapsulated mRNA-based RSV vaccine (mRNA-1345) that encodes the membrane-anchored RSV prefusion-stabilized F glycoprotein is under clinical investigation."); *see also* Exhibit 53 (December 16, 2022, EMA Spikevax® (bivalent BA.1) Assessment Report) at 45 ("Testing of original retains of this material stored in a different freezer unit at -70 C for > 12 months resulted in %encapsulation > 90% for both lots."), 58 ("specification limit NLT 85%"); Exhibit 50 (Schoenmaker (2021) at 4 ("In mRNA-LNP formulations, such as those used in mRNA vaccines ... encapsulation efficiencies ... are typically > 90%.").

**ANSWER**:  Insofar as Paragraph 222 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna denies the allegations in Paragraph 222.

223.     The FDA-approved use for the Accused Product is a "method of eliciting an antibody response against an immunogen in a subject, the method comprising administering intramuscularly to the subject an effective amount of a unit dose of" the Accused Product, "the administering comprising contacting" the Accused Product "with skeletal muscle; and the subject being a human."  *See* paragraphs 46–56, *supra*; *e.g.*, Exhibit 20 (May 2024, mRESVIA® Package Insert) at 2 ("Administer MRESVIA intramuscularly."), 6 ("MRESVIA is a sterile white to off-white injectable suspension for intramuscular use. Each 0.5 mL dose of MRESVIA contains 50 mcg of nucleoside modified mRNA encoding the RSV F glycoprotein stabilized in the prefusion conformation (pre-F protein). … MRESVIA induces an immune response against RSV pre-F protein that protects against LRTD caused by RSV."), 10 (MRESVIA is for people 60 years of age and older); Exhibit 48 (Wilson (2023)) at 2234 ("The mRNA-1345 vaccine is a lipid nanoparticle-encapsulated mRNA-based vaccine encoding the membrane-anchored RSV-F glycoprotein, derived from an RSV A strain, and stabilized in the preF conformation.  A phase 1 clinical trial of this vaccine did not show safety concerns and showed immunogenicity in younger and older adults …."); Exhibit 31 (Shaw, *JID*, jiae035 (2024)) at 6 ("One mRNA-1345 injection of 50 … µg increased RSV-A and RSV-B neutralizing antibody titers (Figure 3, Supplementary Table 4) as well as preF and postF binding antibody concentrations (Figure 4, Supplementary Table 5)."), 8 ("This phase 1 trial showed that mRNA-1345 is well tolerated and immunogenic in younger adults."); Exhibit 32 (Shaw, *JID*, jiae081 (2024)) at 6–7 (E.g., "A single mRNA-1345 injection elicited nAb responses against RSV-A and RSV-B subtypes at all dose levels evaluated."); Exhibit 26 (February 15, 2024, Moderna ReSViNET Conference Presentation) at 5; Exhibit 25 (February 29, 2024, Moderna ACIP Presentation) at 3.

**ANSWER**:  Insofar as Paragraph 223 contains legal conclusions, no response is required.

To the extent an answer is required, Moderna admits that "MRESVIA is indicated for active

immunization for the prevention of lower respiratory tract disease (LRTD) caused by respiratory syncytial virus (RSV) in individuals 60 years of age and older." Exhibit 20 at 2. Moderna denies the remaining allegations in Paragraph 223.

224.    Administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claim 1 of the '534 patent, either literally or under the doctrine of equivalents.

**ANSWER**: Moderna denies the allegations in Paragraph 224.

225.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that administration of the Accused Product to patients in the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use satisfies each and every element of exemplary claim 1 of the '534 patent, either literally or under the doctrine of equivalents.

**ANSWER**: Moderna denies the allegations in Paragraph 225.

226.    On information and belief, Moderna actively, knowingly, and specifically intended and intends, at least since it received notice of its infringement from GSK on October 11, 2024, to induce healthcare practitioners to directly infringe at least claim 1 of the '534 patent by administering the Accused Product within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '534 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 226.

227.    On information and belief, Moderna has been aware at least since it received notice of its infringement from GSK on October 11, 2024, that the Accused Product constitutes a material part of, is especially made and especially adapted for, and is not a staple article or commodity of commerce suitable for substantial use other than, its FDA-approved use in the United States, and therefore to infringe at least claim 1 of the '534 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 227.

228.    For the foregoing reasons, Moderna infringes at least claim 1 of the '534 patent under 35 U.S.C. § 271(b) by actively inducing healthcare practitioners to directly infringe at least claim 1 of the '534 patent by administering the Accused Product to patients within the United States in accordance with the instructions in Moderna's labeling and prescribing information and therefore with its FDA-approved use, without authority or license to do so, during the term of the '534 patent.

**ANSWER**: Moderna denies the allegations in Paragraph 228.

229.    In addition or in the alternative, Moderna contributorily infringes at least claim 1 of the '534 patent under 35 U.S.C. § 271(c) by offering to sell or selling within the United States or importing into the United States, the Accused Product, knowing that the Accused Product constitutes a material part of the inventions of, and is especially made or adapted to infringe, at least claim 1 of the '534 patent, and knowing that the Accused Product is not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER**:  Moderna denies the allegations in Paragraph 229.

230.    GSK is suffering damages from Moderna's infringement of the '534 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 230.

231.    GSK is entitled to an award of monetary damages, including lost profits and/or a reasonable royalty, for Moderna's infringement of the '534 patent.

**ANSWER**:  Moderna denies the allegations in Paragraph 231.

232.    Moderna's infringement of the '534 patent is willful and deliberate at least since it received notice of its infringement from GSK on October 11, 2024.

**ANSWER**:  Moderna denies the allegations in Paragraph 232.

233.    Moderna's conduct with respect to the '534 patent makes this case exceptional under 35 U.S.C. § 285, because, despite an objectively high likelihood that its actions constitute infringement of a valid patent, Moderna continues the aforementioned actions with respect to the Accused Product.

**ANSWER**:  Moderna denies the allegations in Paragraph 233.

## ANSWER TO PLAINTIFFS' PRAYER FOR RELIEF

GSK's Prayer for Relief does not require a response.  To the extent a response is required, Moderna denies that GSK is entitled to any relief whatsoever, whether as sought in its Prayer for Relief, or otherwise, in connection with this civil action.

## MODERNA'S AFFIRMATIVE DEFENSES

Further answering the Complaint, Moderna asserts the following defenses without assuming any burden that they would not otherwise have, including without admitting or acknowledging that they bear the burden of proof as to any of them.  Moderna reserves the right to amend its answer with additional defenses as further information is obtained.

## FIRST AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '770 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed, any valid claim of the '770 patent.

## SECOND AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '861 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed, any valid claim of the '861 patent.

## THIRD AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '864 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed, any valid claim of the '864 patent.

## FOURTH AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '529 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed, any valid claim of the '529 Patent.

## FIFTH AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '467 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed, any valid claim of the '467 patent.

## SIXTH AFFIRMATIVE DEFENSE
### (NON-INFRINGEMENT OF THE '534 PATENT)

Moderna does not directly or indirectly infringe, either literally or under the doctrine of equivalents, and at all relevant times to this action has not infringed any valid claim of the '534 patent.

## SEVENTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '770 PATENT)

The claims of the '770 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

## EIGTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '861 PATENT)

The claims of the '861 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

## NINTH AFFIRMATIVE DEFENSE
### (INVALIDITY OF THE '864 PATENT)

The claims of the '864 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

**TENTH AFFIRMATIVE DEFENSE**
**(INVALIDITY OF THE '529 PATENT)**

The claims of the '529 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

**ELEVENTH AFFIRMATIVE DEFENSE**
**(INVALIDITY OF THE '467 PATENT)**

The claims of the '467 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

**TWELFTH AFFIRMATIVE DEFENSE**
**(INVALIDITY OF THE '534 PATENT)**

The claims of the '534 patent are invalid for failure to satisfy one or more conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.*, including, but not limited to, 35 U.S.C. §§ 101, 102, 103, 112 and/or improper inventorship, or under any of the judicially created doctrines of invalidity.

**THIRTEENTH AFFIRMATIVE DEFENSE**
**(NO WILLFUL INFRINGEMENT)**

The Complaint fails to state a claim for willful infringement.  Moderna has not willfully infringed, and does not willfully infringe, any valid claim of the Patents-in-Suit.

**FOURTEENTH AFFIRMATIVE DEFENSE**
**(FAILURE TO STATE A CLAIM)**

The Complaint fails to state a claim upon which relief can be granted.

## FIFTEENTH AFFIRMATIVE DEFENSE
### (NO EXCEPTIONAL CASE)

Moderna's actions in defending this case or otherwise do not give rise to an exceptional case in GSK's favor under 35 U.S.C. § 285.

## SIXTEENTH AFFIRMATIVE DEFENSE
### (NO COSTS)

GSK is barred by 35 U.S.C. § 288 from recovering any costs associated with this action.

## SEVENTEENTH AFFIRMATIVE DEFENSE
### (PROSECUTION HISTORY DISCLAIMER AND ESTOPPEL)

GSK is barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the Patents-in-Suit or related patent applications, from asserting any interpretation of any valid claims of the Patents-in-Suit that would be broad enough to cover any accused product alleged to infringe the Patents-in-Suit, either literally or by application of the doctrine of equivalents, or under any theory of infringement.

## EIGHTEENTH AFFIRMATIVE DEFENSE
### (PROSECUTION LACHES)

GSK's claim and recovery of damages with respect to any claim of the Patents-in-Suit are barred in whole or in part under the doctrine of prosecution laches. As set forth in Moderna's Counterclaims, Counts XIII-XVIII of which are incorporated by reference herein, none of the Patents-in-Suit are entitled to a priority date earlier than July 16, 2019. Moderna developed the mRNA and LNP platform technology used in its mRESVIA® vaccine prior to July 16, 2019. In the event that any claim of any of the Patents-in-Suit are afforded a priority date before July 16, 2019, then such patent claim(s) are unenforceable due to prosecution laches because GSK intentionally, and inexplicably, (1) rewrote claims unrelated to, and unsupported by, the pending specification and claims, and (2) delayed publicly disclosing the content of those claims and/or that GSK changed the disclosures of the application to which the Patents-in-Suit purport to claim

priority.  Prior to July 16, 2019, the pending specification and claims of the parent applications (to which the Patents-in-Suit purport to claim priority) did not disclose, describe or enable a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.  Prior to July 16, 2019, no publicly available information regarding the Patents-in-Suit disclosed, described or enabled a composition or formulation (or method or use thereof) purporting to encompass Moderna's mRESVIA® vaccine and Moderna reasonably relied on the absence of such information from the public domain.   GSK engaged in unexplained and unreasonable delay in the prosecution of the Patents-in-Suit.  Any enforcement of any claim of the Patents-in-Suit against Moderna's mRESVIA® vaccine would cause unfair and undue prejudice to Moderna.  The Patents-in-Suit are therefore unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches.

## NINETEENTH AFFIRMATIVE DEFENSE
### (35 U.S.C. § 271(e)(1))

The aspects of Moderna's alleged infringement of the Patents-in-Suit are reasonably related to Moderna's development and submission of information to the FDA for the EUA and the Biologics License Application regarding mRESVIA®.  Accordingly, such claims for infringement against Moderna are barred by the safe harbor of 35 U.S.C. § 271(e)(1).

## ADDITIONAL DEFENSES

Moderna reserves the right to assert any additional defenses or counterclaims that discovery may reveal.

## PRAYER FOR RELIEF

WHEREFORE, for its Answer and Declaratory Judgment Counterclaims, Moderna requests the following judgments and relief against GSK:

116

(i)    That all claims against Moderna be dismissed with prejudice and that all relief requested by GSK be denied;

(ii)    That a judgment be entered declaring that Moderna has not infringed and does not infringe, either directly or indirectly, any valid claim of the Patents-in-Suit, either literally or under the doctrine of equivalents;

(iii)    That a judgment be entered declaring that the claims of the Patents-in-Suit are invalid for failure to comply with the statutory provisions of Title 35 of the United States Code, including without limitation, one or more of sections 101, 102, 103, and/or 112;

(iv)    That a judgment be entered declaring that the claims of the Patents-in-Suit are unenforceable against Moderna's mRESVIA® vaccine due to prosecution laches;

(v)    An award of Moderna's costs as the prevailing party;

(vi)    That a judgment be entered declaring that this case is exceptional under 35 U.S.C. § 285, and accordingly that Moderna is entitled to recover reasonable attorneys' fees and costs upon prevailing in this action; and

(vii)    That Moderna be awarded such other relief that the Court deems just and proper.


Dated: December 12, 2024                    Respectfully submitted,

                                            FARNAN LLP

                                            /s/ Brian E. Farnan
                                            Brian E. Farnan (Bar No. 4089)
                                            Michael J. Farnan (Bar No. 5165)
                                            919 North Market Street, 12th Floor
                                            Wilmington, DE 19801
                                            (302) 777-0300
                                            bfarnan@farnanlaw.com
                                            mfarnan@farnanlaw.com

William A. Rakoczy (admitted *pro hac vice*)
Eric R. Hunt (admitted *pro hac vice*)
Heinz J. Salmen (admitted *pro hac vice*)
Deanne M. Mazzochi (admitted *pro hac vice*)
Neil B. McLaughlin (admitted *pro hac vice*)
Adrianne C. Rose (admitted *pro hac vice*)
RAKOCZY MOLINO MAZZOCHI SIWIK LLP
6 West Hubbard Street, Suite 500
Chicago, IL 60654
(312) 527-2157

*Attorneys for Defendants Moderna, Inc.,*
*ModernaTX, Inc., and Moderna US, Inc.*